**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SHARON PARCELL, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

PARAMOUNT GLOBAL,

*Defendant*.

Civil Action No.

1:22-cv-03666

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S OPPOSED MOTION TO COMPEL ARBITRATION,**
**DISMISS CLASS CLAIMS, AND STAY ALL PROCEEDINGS**

WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue
New York, NY 10153
(212) 310-8000

BRYAN CAVE LEIGHTON PAISNER LLP

161 North Clark Street, Suite 4300
Chicago, Illinois 60601

*Attorneys for Defendant Paramount Global*

## TABLE OF CONTENTS


PRELIMINARY STATEMENT .......... 1

BACKGROUND .......... 2

A. CBS.com visitors who created accounts agreed to Terms of Use with dispute resolution clauses. .......... 2

B. Plaintiff agreed to arbitrate when creating her CBS user account. .......... 3

C. Plaintiff filed this lawsuit despite the relevant provisions in the CBS Terms of Use. .......... 6

ARGUMENT .......... 7

I. The Court should compel arbitration of Plaintiff's claim. .......... 7

A. The arbitration agreements are governed by the FAA. .......... 7

B. The arbitration agreements are valid and should be enforced. .......... 8

1. A valid, enforceable written agreement to arbitrate exists. .......... 9

2. Plaintiff's claim falls within the scope of the arbitration agreements. .......... 12

3. Plaintiff refused to arbitrate as required. .......... 14

II. The Court should dismiss Plaintiff's class claims and stay the litigation in favor of individual arbitration. .......... 14

CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011).....7, 10, 12

*Atencio v. TuneCore, Inc.*,
No. CV161925DMGMRWX, 2016 WL 11518598 (C.D. Cal. Sept. 29, 2016),
*aff'd*, 843 F. App'x 42 (9th Cir. 2021).....11

*Belton v. Comcast Cable Holdings, LLC*,
60 Cal. Rptr. 3d 631 (Cal. Ct. App. 2007).....11

*Brennan v. Opus Bank*,
796 F.3d 1125 (9th Cir. 2015).....14

*Burris v. Discover Bank*,
No. 819CV01092JLSDFM, 2019 WL 9516076 (C.D. Cal. Sept. 20, 2019).....13

*Carbajal v. H & R Block Tax Servs., Inc.*,
372 F.3d 903 (7th Cir. 2004).....12, 13

*Carter v. Rent-A-Ctr., Inc.*,
718 F. App'x 502 (9th Cir. 2017).....12

*Crawford v. Beachbody, LLC*,
No. 14CV1573, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014).....10

*Crooks v. Wells Fargo Bank, N.A.*,
312 F. Supp. 3d 932 (S.D. Cal. 2018).....13

*Edmundson v. Amazon.com, Inc.*,
No. 19 C 5835, 2020 WL 5819870 (N.D. Ill. Sept. 30, 2020), *appeal dismissed*, No. 20-3135, 2021 WL 1784414 (7th Cir. Mar. 23, 2021).....8

*Forby v. One Techs.*,
LP, No. 15-0757-DRH-PMF, 2016 WL 1321194 (S.D. Ill. Apr. 5, 2016).....9

*Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*,
No. 17 CV 1542, 2018 WL 2933608 (N.D. Ill. June 12, 2018).....10

*G3 Analytics, LLC v. Hughes Socol Piers Resnick & Dym Ltd.*,
2016 IL App (1st) 160369, 67 N.E.3d 940 (Ill. App. Ct. 2016).....8

*Gore v. Alltel Commc'ns, LLC*,
666 F.3d 1027 (7th Cir. 2012).....9

*In re Cintas Corp. Overtime Pay Arb. Litig.*, No. C06-1781 SBA, 2007 WL 1089695 (N.D. Cal. Apr. 11, 2007) ....................14

*Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, No. 04 C 1190, 2007 WL 951943 (N.D. Ill. Mar. 27, 2007) ....................14

*Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797 (N.D. Ill. Mar. 27, 2015) ....................12

*Ketroser v. Wasserman Media Grp., LLC*, No. CV172201DSFGJSX, 2017 WL 7171743 (C.D. Cal. June 5, 2017)....................14

*Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907 (7th Cir. 1999) ....................13

*KPMG LLP v. Cocchi*, 565 U.S. 18 (2011)....................8

*Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407 (2019)....................7

*Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393 (9th Cir. 2020) ....................9

*Maher v. Microsoft Corp.*, No. 17-CV-00753, 2018 WL 1535043 (N.D. Ill. Mar. 29, 2018)....................8

*Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020)....................9

*Mitchell v. Verizon Wireless*, No. 05 C 511, 2006 WL 862879 (N.D. Ill. Mar. 31, 2006) ....................10

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)....................8, 13

*Perez v. Apollo Educ. Grp., Inc.*, No. 1:14-CV-00605-AWI, 2014 WL 5797148 (E.D. Cal. Nov. 6, 2014) ....................9

*Phoenix Ins. Co. v. Rosen*, 949 N.E. 2d 639 (Ill. 2011) ....................11

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217 (Cal. 2012) ....................10, 11

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010)....................10

*Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*,
553 F. Supp. 3d 452 (N.D. Ill. 2021) ....................4, 6, 13

*Sharif v. Wellness Int'l Network, Ltd.*,
376 F.3d 720 (7th Cir. 2004) ....................1

*Smith v. Vmware, Inc.*,
No. 15-cv-03750-TEH, 2016 WL 54120 (N.D. Cal. Jan. 5, 2016)....................11

*Soucy v. Cap. Mgmt. Servs., L.P.*,
No. 14 C 5935, 2015 WL 404632 (N.D. Ill. Jan. 29, 2015) ....................14

*Swift v. Zynga Game Network, Inc.*,
805 F. Supp. 2d 904 (N.D. Cal. 2011) ....................10

*Tinder v. Pinkerton Sec.*,
305 F3.d 728 (7th Cir. 2022) ....................2

*Williams v. Planet Fitness, Inc.*,
No. 20 CV 3335, 2021 WL 1165101 (N.D. Ill. Mar. 26, 2021) ....................11, 12

*Yei A. Sun v. Advanced China Healthcare, Inc.*,
901 F.3d 1081 (9th Cir. 2018) ....................13

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* .................... *passim*

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* .................... *passim*

**Other Authorities**

American Arbitration Association, *Consumer Arbitration Rules*, R-14(a), R-22,
R-43, https://www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf ....................6

JAMS Arbitrators & Arbitration Services, *Comprehensive Arbitration Rules & Procedures*, Rules 7, 11(b), 16(b), 24(h), https://www.jamsadr.com/rules-comprehensive-arbitration/ ....................4

Defendant Paramount Global ("Paramount") moves to compel arbitration, dismiss Plaintiff's class claims, and stay these proceedings as required by the CBS Terms of Use and pursuant to the Federal Arbitration Act (the "FAA"), 9 U.S.C. § 1 *et seq*.[1]

## PRELIMINARY STATEMENT

Plaintiff's First Amended Complaint (hereinafter, the "Complaint" or "FAC") alleges that Paramount has violated the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA") by sharing information about what videos she allegedly watched on CBS.com, but given her alleged conduct and applicable law, her claim belongs in arbitration. Plaintiff alleges that "[i]n or around 2021," she "created a CBS.com account," and that Paramount shared information about the videos that she watched on CBS.com with Facebook. FAC ¶¶ 53, 55-57. Setting aside the substance of Plaintiff's VPPA claim, at all times in 2021, visitors of www.CBS.com who created CBS user accounts affirmatively consented to CBS's Terms of Use: they clicked a button accompanied by text stating that they were acknowledging they had read and agreed to CBS's hyperlinked Terms of Use. At all times in 2021, these Terms of Use required disputes to be resolved through binding arbitration or in small claims court. The Terms of Use also contained class action and class arbitration waivers. *Infra* Background § B. Despite the fact that the CBS Terms of Use are enforceable as a binding contract under applicable law, Plaintiff has not followed the dispute resolution procedures provided for by the CBS Terms of Use. *See infra* Background § C.

The CBS Terms of Use delegated all arbitrability issues to the arbitrator, including the scope of all arbitrations. *See infra* Argument § I.B.2. The Court should enforce these Terms of

[1] Paramount is also filing a motion to dismiss. In doing so, Paramount does not waive its right to arbitrate. *See Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("[A] party does not waive its right to arbitration merely by filing a motion to dismiss."). Paramount requests that its motion to compel arbitration be resolved before the Court addresses its motion to dismiss.

Use and allow the arbitrator to determine these issues, but even if this Court decides arbitrability, Plaintiff's VPPA claim falls well within the scope of the CBS Terms of Use. Indeed, at all times in 2021, the CBS Terms of Use applied to "any dispute with or claim against us or any of our affiliates . . . in either case arising out of or relating to the Services." "Services," in turn, were defined to encompass the websites of CBS Interactive Inc., its affiliates, and its subsidiaries, thereby encompassing CBS.com. *See infra* Background § B. Plaintiff's claim that Paramount shared information about what videos she watched on CBS.com thus falls within the scope of the CBS Terms of Use. The Court should therefore grant Paramount's motion and compel individual arbitration of Plaintiff's claim, dismiss Plaintiff's class claims, and stay these proceedings pending arbitration.

## BACKGROUND

### A. CBS.com visitors who created accounts agreed to Terms of Use with dispute resolution clauses.

Plaintiff alleges that "[i]n or around 2021," she "created a CBS.com account." FAC ¶ 53. At all points in 2021, the Terms of Use to which CBS account holders were subject included a conspicuous, straightforward dispute resolution clause which required that disputes arising out of related to CBS.com be resolved through binding arbitration or in small claims court, and contained class action and class arbitration waivers. Declaration of Jon Mantell ¶ 4, Ex. B § 2, D § 17 ("Mantell Decl.").[2] As detailed below, by Plaintiff's own allegation, she would have consented to these Terms of Use when creating her CBS user account, and her claim should be sent to individual, binding arbitration.

[2] In resolving a motion to compel arbitration, the Court may consider evidence outside the pleadings, such as declarations and documentation submitted by the parties. *See Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735-36 (7th Cir. 2002).

**B. Plaintiff agreed to arbitrate when creating her CBS user account.**

For the majority of 2021—*i.e.*, on or after March 4, 2021—CBS.com visitors had to navigate through a series of pages on CBS.com before they reached an account creation page. Mantell Decl. ¶ 5, Ex. A. On the account creation page, CBS.com visitors saw the following text: "By pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." *Id.* Ex. A. The hyperlinked phrase "Terms of Use" appeared in blue, distinguishing it from the surrounding text. Clicking on the "Terms of Use" hyperlink led CBS.com visitors to CBS's current Terms of Use (the "2021 TOU"), which they could easily scroll through and read. *Id.* ¶ 5(d), Ex. A, B. To finish creating an account, CBS.com visitors had to affirmatively select "CONTINUE" at the bottom of the account creation page, confirming that they had read and agreed to the 2021 TOU. Mantell Decl. ¶ 5(e), Ex. A at 4.

The 2021 TOU applies to "CBS Interactive Inc., its affiliates or its subsidiaries," and governs the use of its "websites, applications, and other products and services that include an authorized link" to the 2021 TOU (defined collectively as the "Services"). *Id.* Ex. B. Because CBS.com is a website of "CBS Interactive Inc., its affiliates or its subsidiaries," and CBS.com contained an authorized link to the 2021 TOU, *see id.* Ex. B at 1, the "Services" included CBS.com, and the 2021 TOU therefore covered the use of CBS.com. *See id.* ¶ 5(d).

The 2021 TOU contains a clause governing resolution of disputes that arise out of the Services, which provides for binding arbitration. This clause was not hidden in small text or in a footnote. Rather, it clearly and conspicuously appeared beneath a large heading that read, "Disputes; Arbitration." In relevant part, the 2021 TOU's dispute resolution clause states:

> If you have any dispute with or claim against us or any of our affiliates, or if we have a dispute with or claim against you, in either case arising out of or relating to the Services or these Terms (a "Claim"), and the Claim is not resolved by calling our Customer Service department . . . you and we each agree to attempt to resolve

> such Claim first through informal negotiation. If we do not resolve the Claim through informal negotiation, the Claim shall be resolved through binding arbitration or an individual action in small claims court in the U.S. county (or parish) of your residence or in San Francisco, California.[3] If neither of us chooses to resolve the Claim in small claims court, or the small claims court determines that it lacks jurisdiction to resolve the Claim, the Claim must be resolved solely and exclusively by binding arbitration.

*Id.* Ex. B at 1-2. The 2021 TOU also provides that "[c]lass arbitrations and class actions are not permitted under any circumstances," that "the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision," and that "you and we are each waiving the right to a trial by jury or to participate in a class action or class arbitration."

The 2021 TOU also provides that any arbitration will be "administered by the JAMS Mediation, Arbitration and ADR Services ('JAMS') in accordance with the JAMS Comprehensive Arbitration Rules and Procedures," thereby incorporating the JAMS Rules by reference. *Id.* The JAMS Rules specifically provide that "[j]urisdictional and arbitrability disputes, including disputes over the formation, existence, validity, interpretation or scope of the agreement under which Arbitration is sought, and who are proper Parties to the Arbitration, shall be submitted to and ruled on by the Arbitrator." The JAMS Rules also provide for a neutral arbitrator, a written decision, and discovery. JAMS Arbitrators & Arbitration Services, *Comprehensive Arbitration Rules & Procedures*, Rules 7, 11(b), 16(b), 24(h), https://www.jamsadr.com/rules-comprehensive-arbitration/.[4]

From January 1, 2021 through March 3, 2021, CBS.com, which is a free streaming service, did not yet exist. Instead, the www.CBS.com website was called CBS All Access, a

---

[3] Plaintiff alleges that she is a resident of Des Plaines, Illinois, which is within the Northern District of Illinois. *See* FAC ¶ 58.

[4] The JAMS Rules may be considered by the Court in resolving this motion. *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452, 458-59 (N.D. Ill. 2021).

paid service providing on-demand access to a range of offerings. Mantell Decl. ¶ 6. To register for CBS All Access, CBS All Access visitors would have navigated through a series of pages before reaching an account creation page. On the account creation page, CBS All Access visitors were advised that by pressing "CONTINUE" to finish creating their CBS user accounts after entering their information, they were affirming that they had "read and agree to the Terms of Use." The phrase "Terms of Use" was a hyperlink and appeared in blue font, setting it apart from the surrounding text. *Id.* Ex. C. From January 1, 2021 through February 17, 2021, clicking on the "Terms of Use" hyperlink led CBS All Access visitors to a page containing CBS's prior Terms of Use (the "2017 TOU"), which they could easily scroll through and read. *Id.* Ex. C, D. [5]

The opening paragraph of the 2017 TOU clearly outlined their broad scope: they applied to "CBS Interactive Inc., its affiliates and its subsidiaries" and governed use of the "websites, applications, and other products and services offered by CBS Interactive or its affiliates that include an authorized link to these Terms," defined collectively as the "Services." Because CBS All Access is a website of "CBS Interactive Inc. or its affiliates," and CBS All Access contained an authorized link to the 2017 TOU, the "Services" included CBS All Access, and the 2017 TOU therefore covered the use of CBS All Access. *See id.* ¶ 6(e); (e)(i), Ex. C at 5, Ex. D at 1.

The 2017 TOU contained a clause governing resolution of disputes that arise out of the Services, which provides for binding arbitration. This dispute resolution clause was not hidden in small text or in a footnote. Rather, it appeared beneath a heading in large font that read "Disputes, Arbitration," making the presence of the clause clear and conspicuous. In relevant part, the dispute resolution clause in the 2017 TOU provided:

> If you have any dispute with or claim against us or any of our

[5] On February 18, 2021, CBS All Access updated its Terms of Use, and by clicking on the "Terms of Use" hyperlink, visitors were directed to a page containing the 2021 TOU, which they could easily scroll through and read. *See id.* Ex. B.

> affiliates, or if we have a dispute with or claim against you, in either case arising out of or relating to the Services or these Terms (a "Claim"), and the Claim is not resolved by calling our customer service department . . . you and we each agree to resolve such Claim through an individual binding arbitration or through an individual action in small claims court in the U.S. county (or parish) of your residence or in San Francisco, California.

*Id.* Ex. D § 17. The 2017 TOU also provided that "[c]lass arbitrations and class actions are not permitted," "your Claim may not be consolidated with any other person's claim," and "that the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision, and you and we are each waiving the right to a trial by jury or to participate in a class action." *Id.*

The 2017 TOU further provided that "[a]ny such arbitration shall be administered by the American Arbitration Association" (hereinafter, the "AAA"), "and be conducted in accordance with its Consumer Arbitration Rules." *Id.* These rules provide that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." They also provide for a neutral arbitrator, a written decision, and discovery. American Arbitration Association, *Consumer Arbitration Rules* at 7, R-14(a), R-22, R-43, https://www.adr.org/sites/default/files/Consumer_Rules_Web_2.pdf.[6]

**C. Plaintiff filed this lawsuit despite the relevant provisions in the CBS Terms of Use.**

Rather than contact customer service, engage in informal negotiation, or file a claim in small claims court, Plaintiff filed her initial complaint in this Court on July 14, 2022, alleging that Paramount violated the VPPA by sharing information with Facebook about the videos that individuals with CBS user accounts watched on CBS.com. *See* ECF No. 1; *see also* FAC ¶¶ 3-5, 70-79. Plaintiff purports to seek certification of a nationwide class of "persons in the United

[6] The Court may consider the AAA Rules in resolving this motion. *Sha-Poppin*, 553 F. Supp. at 458-59.

States who have Facebook and CBS.com accounts, and viewed videos on CBS.com." FAC ¶ 63. Setting aside that Paramount rejects the substance of Plaintiff's VPPA claim, by Plaintiff's own allegations, her claim belongs in arbitration.[7]

## ARGUMENT

### I. The Court should compel arbitration of Plaintiff's claim.

Plaintiff's allegations indicate that she entered into an agreement to arbitrate disputes relating to CBS.com. Indeed, in 2021—which is when she alleges she created her CBS user account (*supra* Background § A (FAC ¶ 53))—individuals who created CBS user accounts had to affirmatively consent to Terms of Use, which at all times required that disputes arising out of or relating to CBS.com be resolved through binding arbitration or in small claims court, and contained class action and class arbitration waivers. *See supra* Background § B. The FAA applies to these arbitration agreements, and it "requires courts to enforce covered arbitration agreements according to their terms." *Lamps Plus, Inc. v. Varela*, 139 S. Ct. 1407, 1412 (2019). The Court should thus enforce these agreements by compelling arbitration of Plaintiff's claims.

#### A. The arbitration agreements are governed by the FAA.

The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Indeed, there is a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citation omitted),

[7] Because Plaintiff did not attempt to resolve her claim through informal negotiation or by filing an action in small claims court, her only option left is to arbitrate her claim. *See* Mantell Decl. Ex. B § 2 ("If we do not resolve the Claim through informal negotiation, the Claim shall be resolved through binding arbitration or an individual action in small claims court . . . If neither of us chooses to resolve the Claim in small claims court . . . the Claim must be resolved solely and exclusively by binding arbitration.").

and the FAA "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 565 U.S. 18, 21 (2011) (citation omitted). Under the FAA, courts must "move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

By their plain terms, the arbitration agreements in the 2021 and 2017 TOU are governed by the FAA. Both state: "You and we agree that the U.S. Federal Arbitration Act governs the interpretation and enforcement of this provision." *Supra* Background § B (Mantell Decl. Exs. B § 2, D § 17). Moreover, Plaintiff's alleged use of CBS.com involves interstate commerce. Indeed, Plaintiff suggests as much in her Complaint, stating that Paramount is a "'video tape service provider' because it . . . . 'engag[es] in the business, in or affecting interstate or foreign commerce, of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials.'" FAC ¶ 72 (alteration in original). In addition, this District has recognized that the FAA covers online transactions and entertainment. *See Maher v. Microsoft Corp.*, No. 17-CV-00753, 2018 WL 1535043, at *1-3, *6 (N.D. Ill. Mar. 29, 2018) (enforcing arbitration agreement included in online video game service's terms and conditions). Furthermore, the FAA also applies where, as here, the parties are citizens of different states. *G3 Analytics, LLC v. Hughes Socol Piers Resnick & Dym Ltd.,* 2016 IL App (1st) 160369, ¶ 17, 67 N.E.3d 940, 945 (Ill. App. Ct. 2016) (finding the FAA applied to a fee agreement contemplating litigation in multiple jurisdictions between parties from different states); FAC ¶¶ 58-59.

For the foregoing reasons, the FAA applies to the 2021 and 2017 TOU.

**B. The arbitration agreements are valid and should be enforced.**

"Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: [1] a written agreement to arbitrate, [2] a dispute within the scope of the arbitration agreement, and [3] a refusal to arbitrate." *Edmundson v. Amazon.com, Inc.*, No. 19 C

5835, 2020 WL 5819870, at *1 (N.D. Ill. Sept. 30, 2020), *appeal dismissed*, No. 20-3135, 2021 WL 1784414 (7th Cir. Mar. 23, 2021); *see also Perez v. Apollo Educ. Grp., Inc.*, No. 1:14-CV-00605-AWI, 2014 WL 5797148, at *1 (E.D. Cal. Nov. 6, 2014).[8] All three requirements are met here. Plaintiff, by her own allegations, consented to the CBS Terms of Use in 2021, which at all points contained an agreement to arbitrate disputes arising out of the use of CBS.com on an individual basis. *Supra* Background § B. Despite this agreement, Plaintiff filed this lawsuit and refused to arbitrate.

**1. A valid, enforceable written agreement to arbitrate exists.**

Online "clickwrap" agreements—where website visitors, as here, indicate assent to hyperlinked website terms and conditions through clicking a button—are enforceable like any other contract. *See supra* Background § B (Mantell Decl. Ex. A, C); *Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (enforcing an arbitration provision where users clicked an "'Accept' button below the following statement: 'By tapping 'Accept', you agree to use the Shutterfly for Android software and the associated Shutterfly services in accordance with Shutterfly's Terms of Use'"); *Forby v. One Techs.*, LP, No. 15-0757-DRH-PMF, 2016 WL 1321194, at *1 (S.D. Ill. Apr. 5, 2016) (enforcing online agreement where above a "Continue" button appeared the following language with a hyperlink to the terms: "By clicking on the 'Continue' button below, you agree to the Offer Details, to the Terms and Conditions . . ."); *Lee v. Ticketmaster L.L.C.*, 817 F. App'x 393, 394 (9th Cir. 2020) (enforcing Terms of Use where website "displayed the phrase: 'By continuing past this page, you

[8] "To determine whether a contract's arbitration clause applies to a given dispute, federal courts apply state-law principles of contract formation." *Gore v. Alltel Commc'ns, LLC*, 666 F.3d 1027, 1032 (7th Cir. 2012). Both the 2021 and the 2017 TOU provide for application of California law. Mantell Decl. Ex. B § 16, D § 16. Regardless of whether California/Ninth Circuit law or Illinois/Seventh Circuit law is applied, Plaintiff should be deemed to be bound by the arbitration agreement in either the 2021 or 2017 TOU as explained *infra*.

agree to our Terms of Use'"); *Crawford v. Beachbody, LLC*, No. 14CV1573, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (an "agreement constitutes a binding contract where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I Accept' button and clicks that button.").

Moreover, at all times in 2021, users of the www.CBS.com website, whether it was CBS All Access (before March 4, 2021) or CBS.com (on and after March 4, 2021), were provided reasonable notice of the CBS Terms of Use. Courts have recognized that making terms and conditions available via hyperlink, as CBS.com did here (*supra* Background § B (Mantell Decl. Ex. A, C)), provides reasonable notice. *Friends for Health: Supporting N. Shore Health Ctr. v. PayPal, Inc.*, No. 17 CV 1542, 2018 WL 2933608, at *5 (N.D. Ill. June 12, 2018); *Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 911-12 (N.D. Cal. 2011).

Parties opposing arbitration bear the heavy burden of proving unconscionability. *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 282 P.3d 1217, 1224-25 (Cal. 2012); *Mitchell v. Verizon Wireless*, No. 05 C 511, 2006 WL 862879, at *2 (N.D. Ill. Mar. 31, 2006). Plaintiff does not allege that the arbitration agreements are unconscionable, but to the extent the Court considers the issue, neither arbitration agreement is unconscionable. The Court's assessment is limited to evaluating whether either arbitration agreement (as opposed to the entire contract) is unconscionable. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70-71 (2010). Unconscionability encompasses a "'procedural' and a 'substantive' element, the former focusing on 'oppression' or 'surprise' due to unequal bargaining power, the latter on 'overly harsh or 'one-sided' results." *Concepcion*, 563 U.S. at 340 (citation omitted).

The arbitration agreements here are not procedurally unconscionable. Plaintiff could have chosen not to create a CBS user account and streamed television shows online through a

completely different platform. *See Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 650 (Cal. Ct. App. 2007) ("The availability of alternative sources from which to obtain the desired service defeats any claim of oppression, because the consumer has a meaningful choice."). Moreover, Plaintiff was not "surprised" by the arbitration agreements. The arbitration agreements in both the 2021 and 2017 TOU were conspicuous; they were not hidden in small font or a footnote, and they were accompanied by large headings identifying them as "Disputes; Arbitration" provisions. Mantell Decl. Ex. B § 2, D § 17; *Williams v. Planet Fitness, Inc.*, No. 20 CV 3335, 2021 WL 1165101, at *4 (N.D. Ill. Mar. 26, 2021) (arbitration provision set forth in "same font size and color as the remaining provisions and clearly labeled with the heading 'Dispute Resolution'" was sufficiently conspicuous); *Atencio v. TuneCore, Inc.*, No. CV161925DMGMRWX, 2016 WL 11518598, at *7 (C.D. Cal. Sept. 29, 2016) ("The arbitration provisions are clearly stated and conspicuous, labeled with the heading, 'Arbitration,' printed in bold text."), *aff'd*, 843 F. App'x 42 (9th Cir. 2021).

In addition, the arbitration agreements are not substantively unconscionable. They are mutual—*i.e.*, both Plaintiff and CBS Interactive Inc. (as well as its affiliates and subsidiaries) are required to arbitrate claims. Mantell Decl. Ex. B § 2, D § 17. This strongly weighs against a finding of substantive unconscionability. *Pinnacle Museum*, 282 P.3d at 1233; *Phoenix Ins. Co. v. Rosen*, 949 N.E. 2d 639, 647, 656 (Ill. 2011). The 2021 and the 2017 TOU also incorporate the rules of a neutral third party—JAMS in the case of the 2021 TOU, and the AAA in the case of the 2017 TOU—both of which provide for fair procedures, including a neutral arbitrator, a written decision, and discovery. *Supra* Background § B, notes 4, 6. This too precludes a finding of substantive unconscionability. *See Smith v. Vmware, Inc.*, No. 15-cv-03750-TEH, 2016 WL 54120, at *5 (N.D. Cal. Jan. 5, 2016) (rejecting argument that AAA Rules are substantively

unconscionable); *Williams*, 2021 WL 1165101, at *5 (citation omitted) (alteration in original) (agreements which incorporate AAA and JAMS rules allow plaintiffs to "'ascertain the dispute resolution processes and rules to which they [are] agreeing,' thus factoring against a finding of substantive unconscionability."). Indeed, as Judge Easterbrook noted of an arbitration clause: "Is enforcement of this clause unconscionable? How could it be? Arbitration is just a forum; people may choose freely which forum will resolve their dispute." *Carbajal v. H & R Block Tax Servs., Inc.*, 372 F.3d 903, 905-06 (7th Cir. 2004).

In addition, the class waiver provisions in the 2021 and 2017 TOU are also enforceable. *Concepcion*, 563 U.S. at 344 ("Requiring the availability of classwide arbitration interferes with fundamental attributes of arbitration and thus creates a scheme inconsistent with the FAA"); *Carter v. Rent-A-Ctr., Inc.*, 718 F. App'x 502, 504 (9th Cir. 2017) ("We have interpreted *Concepcion* as foreclosing any argument that a class action waiver, by itself, is unconscionable under state law or that an arbitration agreement is unconscionable solely because it contains a class action waiver"); *Kemph v. Reddam*, No. 13 CV 6785, 2015 WL 1510797, at *6 (N.D. Ill. Mar. 27, 2015) (following *Concepcion* and enforcing class action and class arbitration waivers).

Based on her own allegation that she created a CBS user account in 2021 (*supra* Background § A (FAC ¶ 53)), Plaintiff thus entered into a valid and enforceable written agreement to arbitrate her VPPA claim on an individual basis.

**2. Plaintiff's claim falls within the scope of the arbitration agreements.**

In addition, Plaintiff's claim falls within the scope of the 2021 and 2017 TOUs' arbitration agreements. Both provide that "[i]f you have any dispute with or claim against us or any of our affiliates . . . in either case arising out of or relating to the Services . . . (a 'Claim')," and the Claim is not resolved through "informal negotiation," the Claim must be resolved through "binding arbitration or an individual action in small claims court in the U.S. county (or

parish) of your residence or in San Francisco, California." Mantell Decl. Ex. B § 2, D § 17. In both the 2021 and 2017 TOUs, the "Services" are defined to include the "websites" offered by CBS Interactive and its affiliates that "include an authorized link to these Terms," thereby encompassing CBS.com (or CBS All Access, if Plaintiff's CBS user account was created before March 4, 2021). *Supra* Background § B. The Seventh Circuit specifically noted that "[i]t would be hard to draft a broader [arbitration] clause" than one that required arbitration of "any claim or dispute." *Carbajal*, 372 F.3d at 904-05 (alteration in original). *See also Crooks v. Wells Fargo Bank, N.A.*, 312 F. Supp. 3d 932, 937 (S.D. Cal. 2018) (granting motion to compel and characterizing an arbitration provision containing "any claim or dispute" as "broad.").

In addition, the arbitration agreements' "arising out of or relating to" language creates a "presumption of arbitrability" for claims arising out of the use of CBS.com such as Plaintiff's. *Kiefer Specialty Flooring, Inc. v. Tarkett, Inc.*, 174 F.3d 907, 909-10 (7th Cir. 1999); *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (clauses with "related to" language "appl[y] to any dispute that has some logical or causal connection to the parties' agreement"); *Burris v. Discover Bank*, No. 819CV01092JLSDFM, 2019 WL 9516076, at *3 (C.D. Cal. Sept. 20, 2019) (pointing to the broad scope of "arising out of or relating to" language in finding that an arbitration agreement encompassed plaintiff's claim). Moreover, under the FAA, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25.

In any event, the JAMS Rules and the AAA Consumer Arbitration Rules (incorporated by reference into the 2021 and 2017 TOU, respectively), leave the question of arbitrability to the arbitrator, *supra* Background § B, notes 4, 6, so whether Plaintiff's claim is arbitrable is a question for the arbitrator. *Sha-Poppin*, 553 F. Supp. 3d at 459 (leaving questions of arbitrability

to the arbitrator where a bank deposit account agreement incorporated JAMS and AAA rules by reference); *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) ("[I]ncorporation of the AAA rules constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability."); *Ketroser v. Wasserman Media Grp., LLC*, No. CV172201DSFGJSX, 2017 WL 7171743, at *2 (C.D. Cal. June 5, 2017) ("[I]ncorporation of the JAMS Rules provide 'clear and unmistakable' evidence of the parties' intent to arbitrate arbitrability.").

#### 3. Plaintiff refused to arbitrate as required.

Both the 2021 TOU and the 2017 TOU provide that disputes must first be addressed through contacting customer service and attempting to resolve the dispute through informal negotiation. If that fails, disputes can be resolved either in small claims court or through binding arbitration, but if disputes are not resolved in small claims court, they must be resolved in individual binding arbitration. Mantell Decl. Ex. B § 2, D § 17. Here, Plaintiff did not attempt to engage in informal negotiation with Paramount, she did not file a claim in small claims court, and she filed this lawsuit. She has therefore refused to arbitrate. *See In re Cintas Corp. Overtime Pay Arb. Litig.*, No. C06-1781 SBA, 2007 WL 1089695, at *6 (N.D. Cal. Apr. 11, 2007) (a Plaintiff refuses to arbitrate "when he or she initiates litigation in court").

## II. The Court should dismiss Plaintiff's class claims and stay the litigation in favor of individual arbitration.

Because Plaintiff's claim is subject to individual arbitration, her class claims should be dismissed in favor of arbitration, and this litigation should be stayed pending resolution of the arbitration. *See Int'l Ins. Agency Servs., LLC v. Revios Reinsurance U.S., Inc.*, No. 04 C 1190, 2007 WL 951943, at *7 (N.D. Ill. Mar. 27, 2007) (granting motion to compel arbitration and staying proceedings); *see also Soucy v. Cap. Mgmt. Servs., L.P.*, No. 14 C 5935, 2015 WL 404632, *4, 6 (N.D. Ill. Jan. 29, 2015) ("[T]here is a growing trend among district courts to

dismiss a case when all of the claims alleged therein are subject to arbitration.”).

**CONCLUSION**

For the foregoing reasons, Paramount respectfully requests that the Court order Plaintiff to submit her claim to individual binding arbitration, dismiss her class claims, and stay the litigation pending the conclusion of the arbitration process.

Dated: New York, New York
September 8, 2022

Respectfully submitted,

*/s/ David L. Yohai*
David L. Yohai (admitted *pro hac vice*)
Blake J. Steinberg (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
blake.steinberg@weil.com

David R. Singh (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
david.singh@weil.com

Brian A. Sher
Steven G. Trubac
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Facsimile: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

*Attorneys for Paramount Global*