**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| SHARON PARCELL, individually and on behalf all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>PARAMOUNT GLOBAL,<br><br>*Defendant*. | Civil Action No.<br><br>1:22-cv-03666 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue
New York, NY 10153
(212) 310-8000

BRYAN CAVE LEIGHTON PAISNER LLP

161 North Clark Street, Suite 4300
Chicago, Illinois 60601

*Attorneys for Defendant Paramount Global*

# TABLE OF CONTENTS


PRELIMINARY STATEMENT ..... 1

BACKGROUND ..... 3

LEGAL STANDARD FOR MOTION TO DISMISS ..... 7

ARGUMENT ..... 8

I. Plaintiff did not comply with the CBS Terms of Use to which she consented. ..... 8

II. Plaintiff failed to plausibly allege that Paramount violated the VPPA. ..... 9

A. Plaintiff has not plausibly alleged that Paramount disclosed PII. ..... 9

B. Plaintiff has not plausibly alleged that Paramount "knowingly" disclosed PII. ..... 12

CONCLUSION ..... 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................7

*Bernardino v. Barnes & Noble Booksellers, Inc.*,
No. 17CV04570LAKKHP, 2017 WL 3727230 (S.D.N.Y. Aug. 11, 2017)....................11, 14

*Crawford v. Beachbody, LLC*,
No. 14CV1583, 2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)....................9

*DeServi v. Bryant*,
70 F. Supp. 3d 921 (N.D. Ill. 2014)....................8

*Fitzwilliam v. 1220 Iroquois Venture*,
598 N.E.2d 1003 (Ill. App. Ct. 1992)....................9

*Geinosky v. City of Chicago*,
675 F.3d 743 (7th Cir. 2012)....................6, 8

*George v. AMGEN, Inc.*,
No. 18 C 6421, 2019 WL 10893813 (N.D. Ill. June 6, 2019)....................6

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015)....................10, 13, 14

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014)....................10

*Kerr v. Pusateri*,
212 N.E.2d 263 (Ill. App. Ct. 1965)....................9

*MAUM Meditation House of Truth v. Lake County*,
55 F. Supp. 3d 1081 (N.D. Ill. 2014)....................8

*Meyers v. Guar. Sav. & Loan Assn.*,
144 Cal. Rptr. 616 (Ct. App. 1978)....................9

*Miracle-Pond v. Shutterfly, Inc.*,
No. 19 CV 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020)....................8

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)....................12, 13

*Resnick v. Schwartz*,
No. 17 C 04944, 2018 WL 4191525 (N.D. Ill. Sept. 3, 2018)....................4

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015)....................10, 11, 12, 14

*Sharif v. Wellness Int'l Network, Ltd.*,
376 F.3d 720 (7th Cir. 2004) ....................1

*Shen Wei (USA) Inc. v. Sempermed, Inc.*,
No. 05 C 6004, 2007 WL 328846 (N.D. Ill. Jan. 30, 2007) ....................4

*Tudela v. Medicredit, Inc.*,
No. 21 C 5515, 2022 WL 2828754 (N.D. Ill. July 20, 2022) ....................8

*Williams v. Fed. Express Corp.*,
No. CV 99-06252 MMM 9, 1999 WL 1276558 (C.D. Cal. Oct. 6, 1999) ....................9

*Wilson v. Triller, Inc.*,
No. 21-cv-11228 (JSR), 2022 WL 1138073 (S.D.N.Y. Apr. 18, 2022) ....................12

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* .................... *passim*

**Other Authorities**

S. REP. NO. 100-599 (1988) ....................1

Data Protection Comm'r, *Facebook Ireland Ltd: Report of Re-Audit* (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf....................11

Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/ (last visited Jan. 4, 2022) ....................6, 11

Federal Rules of Civil Procedure Rule 12(b)(6)....................1, 7, 8

Meta for Developers, *Advanced Matching*,
https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching (last visited Sept. 2, 2022)....................12

Paramount, *CBS User Account Creation Page*,
https://www.cbs.com/account/signup/createaccount (last visited Sept. 2, 2022) ....................4

Paramount, *CBS Terms of Use*, https://legal.paramount.com/us/en/cbsi/terms-of-use (Feb. 18, 2021)....................4, 8

Defendant Paramount Global ("Paramount") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff Sharon Parcell's First Amended Complaint (hereinafter, the "Complaint" or "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]

## PRELIMINARY STATEMENT

This lawsuit, filed by firms that have recently bombarded the United States courts with similar complaints, is a baseless attempt to stretch the Video Privacy Protection Act, 18 U.S.C. § 2710 *et seq.* (the "VPPA") well beyond its intended scope in disregard of the statute's plain text and the relevant case law. As Plaintiff acknowledges, the catalyst for the VPPA was a controversy following President Ronald Reagan's nomination of Judge Robert Bork to the Supreme Court. FAC ¶ 6. During Bork's confirmation hearings, a movie rental store disclosed Bork's video tape rental history to a Washington newspaper. The newspaper then published a profile about Bork based on "the titles of 146 films his family had rented" from the store. S. REP. NO. 100-599, at 5 (1988).

Following these events, Congress enacted the VPPA to permit a consumer of a "video tape service provider"—defined as a person "engaged in the business . . . of rental, sale, or delivery of prerecorded video cassette tapes or similar audio visual materials" (18 U.S.C. § 2710(a)(4))—to assert a claim against a video tape service provider who "knowingly" disclosed their "personally identifiable information" ("PII"). 18 U.S.C. § 2710(b)(1). Plaintiff's theory that Paramount violated the VPPA through use of the Facebook Tracking Pixel fails because:

*First*, Plaintiff has failed to take required steps in raising her claim with Paramount, which are outlined in the CBS Terms of Use to which she consented. Indeed, Plaintiff's

[1] Paramount is also filing a motion to compel arbitration, which Paramount requests be resolved before this motion to dismiss. In filing this motion to dismiss, Paramount does not waive its right to arbitrate. *See Sharif v. Wellness Int'l Network, Ltd.*, 376 F.3d 720, 726 (7th Cir. 2004) ("[A] party does not waive its right to arbitration merely by filing a motion to dismiss.").

Complaint demonstrates that she and other CBS.com visitors had to affirmatively consent to the CBS Terms of Use when creating their accounts. FAC at Fig. 14. The CBS Terms of Use require individuals with CBS user accounts to attempt to resolve disputes with Paramount by (a) contacting customer service, (b) engaging in informal negotiation, and (c) sending a written notice detailing their claim. *See infra* Background at 3-4. Plaintiff, however, took none of these steps, and her claim should be dismissed for her failure to do so.

*Second*, Plaintiff does not plausibly allege that Paramount disclosed PII under the VPPA. Plaintiff alleges that CBS.com hosts the Facebook Tracking Pixel, a digital marketing tool that records actions taken by CBS.com visitors. FAC ¶¶ 17-21. Plaintiff further alleges that Paramount transmits this "event" data to Facebook alongside user identifying information through: (a) Facebook cookies, or (b) form field information collected via a Pixel feature called Advanced Matching. *Id.* ¶¶ 44-47. As to (a), with respect to the c_user cookie, which allegedly contains the user's unencrypted Facebook ID, Plaintiff admits that it is only transmitted if the user is logged into Facebook while watching videos on CBS.com. *Id.* ¶¶ 23-28. Setting aside whether unencrypted Facebook IDs permit ordinary persons to identify other individuals, Plaintiff does not allege that she was logged into Facebook while watching videos on CBS.com, so she fails to plausibly allege the relevant information was transmitted here. The other cookies the Complaint discusses contain encrypted Facebook IDs and browser identifiers, which do not constitute PII under the VPPA. Moreover, information incorporated by reference into the Complaint states that these are Facebook's cookies, and accordingly, it is Facebook's cookies that are transmitting the information to Facebook; to the extent there even is any disclosure, Paramount is not doing the disclosing. *See infra* Background at 6. As to (b), Plaintiff fails to address that information collected via Advanced Matching is hashed (irreversibly obfuscated by

encryption) and fails to allege that she watched videos within close proximity of entering her information to create an account. For these reasons, Plaintiff fails to plausibly allege that Paramount has disclosed PII here.

*Third*, Plaintiff fails to plausibly allege that Paramount *knowingly* disclosed PII. 18 U.S.C. § 2710(b)(1). At most, Plaintiff (a) alleges in a conclusory fashion that Paramount knowingly disclosed to Facebook identifiers such as names, email addresses, and Facebook IDs "alongside event data for videos," FAC ¶¶ 44-45, and (b) that the functionality and purposes of the Facebook Tracking Pixel and its Advanced Matching feature evidence Paramount's knowledge. *Infra* Background at 7. But as explained herein, these allegations are insufficient: case law is clear that a VPPA plaintiff must plausibly allege that the video tape service provider knew it disclosed information that itself identified a consumer and connected him or her with their video viewing history; it would not suffice for Plaintiff to allege that Paramount transmits anonymized video viewing history, but that Facebook can derive a user's identity from the information it separately collects. *Infra* Argument § II.B. As such, Plaintiff has failed to plausibly allege that Paramount knowingly disclosed PII as required to state a VPPA claim.

## BACKGROUND

***The Parties.*** Plaintiff alleges that Paramount "develops, owns, and operates CBS.com, which offers 'CBS television online.'" FAC ¶ 2. Plaintiff alleges that she (a) "created a CBS.com account" "[i]n or around 2021"; (b) "created a Facebook account" "[i]n or around 2009"; and (c) has "frequented CBS.com to, among other things, watch television shows" "[s]ince creating an account." FAC ¶¶ 52-54. In addition, Plaintiff indicates that to create a CBS.com account, she was required to provide certain information to Paramount including her name, email address, birthday, zip code, and gender. *Id*. at Fig. 14.

***Plaintiff Assented to the CBS Terms of Use.*** Plaintiff's Complaint indicates that when

creating her CBS user account in 2021, she assented to CBS's Terms of Use. Indeed, she indicates that when creating CBS user accounts, CBS.com visitors used a page where they had to affirmatively consent to the CBS Terms of Use. *See id.* Fig. 14. The Complaint shows a screenshot of this webpage, which states: "By pressing 'Continue', you confirm that you have read and agree to the Terms of Use and acknowledge our Privacy Policy." *Id.* Plaintiff, however, fails to note that the "Terms of Use" phrase is a hyperlink that leads to CBS's Terms of Use, which users can easily scroll through and read. *See* Paramount, *CBS User Account Creation Page*, https://www.cbs.com/account/signup/createaccount (last visited Sept. 2, 2022).[2]

The CBS Terms of Use in effect in 2021—when Plaintiff alleges she created her CBS user account—required taking certain steps to resolve disputes with Paramount. The Terms of Use provided that if a dispute with Paramount was "not resolved by calling our Customer Service department . . . you and we each agree to attempt to resolve such Claim first through informal negotiation." The Terms of Use further provided that "[i]f we do not resolve the Claim through informal negotiation," "you must first send to CBS Interactive a written notice of your Claim," which "must (1) be sent by certified mail; (2) be addressed to: CBS Interactive, Attn: Legal Department, 235 Second Street, San Francisco, CA 94105; (3) describe the nature of your Claim; and (4) specify the damages or other relief you seek." Paramount, *CBS Terms of Use*, https://legal.paramount.com/us/en/cbsi/terms-of-use (Feb. 18, 2021).[3] Plaintiff took none of

---

[2] The Court may consider the account creation page in resolving this motion because (a) it is publicly available on Paramount's website, (b) it is incorporated into the Complaint at Figure 14, and (c) Plaintiff's allegations related to creating her CBS user account are central to her claim. *See Shen Wei (USA) Inc. v. Sempermed, Inc.*, No. 05 C 6004, 2007 WL 328846, at *3 n.3 (N.D. Ill. Jan. 30, 2007); *Resnick v. Schwartz*, No. 17 C 04944, 2018 WL 4191525, at *3 n.8 (N.D. Ill. Sept. 3, 2018).

[3] The Court may consider the CBS Terms of Use in effect in 2021 because they are (a) available on Paramount's website, (b) are referenced in the Complaint at Figure 14, and (c) are central to whether Plaintiff's claim is valid. *Shen Wei*, 2007 WL 328846, at *3 n.3; *Resnick,* 2018 WL 4191525, at *3 n.8. Plaintiff does not specify when in 2021 she created her CBS user account, but from January 1 through

these steps here.

***The Alleged Disclosures.*** Plaintiff alleges that CBS.com hosts a marketing tool called the Facebook Tracking Pixel to "better track analytics and target its advertisements," FAC ¶¶ 17, 37, and that Paramount uses the Pixel to record CBS.com visitors' actions, sometimes referred to as "events." *Id.* ¶ 13. This event data allegedly includes "the video title and when users click pause or play." *Id.* ¶ 20. Plaintiff also alleges that Paramount "compels" CBS.com visitors' browsers to transmit cookies to Facebook. *Id.* ¶¶ 24-28. While Plaintiff alleges that Paramount discloses nine different "cookies," *id.* ¶¶ 23-24, 27, she only asserts that three of these cookies "sufficiently permit[] an ordinary person to identify a specific individual's video viewing behavior": the "c_user cookie," the "fr cookie," and the "_fbp cookie." *Id.* ¶¶ 45-47.

To begin, as for the c_user cookie, the Complaint alleges that it contains a "visitor's unencrypted Facebook ID[,]" which Plaintiff alleges constitutes PII. Even if true, by Plaintiff's own admission, the c_user cookie only transmits information to Facebook while the user is logged into Facebook. *Id*. ¶¶ 22-28. Tellingly, despite alleging that Paramount disclosed "identifiers" for her "including the c_user" cookie, *id.* ¶ 55, she fails to allege that she was logged into Facebook while she watched videos on CBS.com. *E.g., id.* ¶¶ 52-57. Plaintiff therefore fails to plausibly allege that unencrypted Facebook IDs were actually transmitted here.

As for the fr cookie and _fbp cookies, Plaintiff alleges that the fr cookie contains "an encrypted Facebook ID and browser identifier" and that the _fbp cookie contains "an unencrypted value that uniquely identifies a browser." *Id.* ¶¶ 25, 28. Both cookies are allegedly transmitted regardless of whether the website visitor is logged into Facebook or has a Facebook account. *Id.* ¶¶ 24-28. But neither cookie contains PII. Plaintiff never alleges ordinary persons

---

February 17, 2021, the webpage she references linked to the prior CBS Terms of Use, which contained substantially the same terms as those listed above, apart from the informal negotiation requirement.

could decrypt the fr cookie's Facebook ID, an ID which is encrypted by Facebook. Similarly, Plaintiff fails to explain how browser identifiers uniquely identify an individual person. *Id.* ¶ 28.

Most importantly, however, Plaintiff does not and cannot allege that these are Paramount's cookies, or relatedly, that Paramount is involved in the disclosure of information from these cookies to Facebook. Indeed, Facebook's Cookies Policy (which is cited in the Complaint) establishes that all three of these cookies are Facebook's, and that the c_user and fr cookies are placed on a user's browser by Facebook, not by other entities such as Paramount. Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/ (last revised Jan. 4, 2022).[4] Moreover, Plaintiff does not allege that either the c_user cookie or the fr cookie is transmitted as a "first-party cookie," which she alleges would be "'created by the website the user is visiting'—*i.e.*, CBS.com." The Complaint distinguishes first party cookies from "third-party cookie[s]," which would be "'created by a website with a domain name other than the one the user is currently visiting'—*i.e.*, Facebook." FAC ¶ 32. While the Complaint alleges that the _fbp cookie is transmitted as a "first party cookie," *id.*, Plaintiff does not explain how Paramount places the cookie (if it does so at all), and moreover, as mentioned above, the _fbp cookie is Facebook's cookie. Given that these are Facebook's cookies, not Paramount's, it cannot be that Paramount "compel[s] a visitor's browser to disclose" the cookies "alongside event data for videos," *id.* ¶ 45-46, since information from these cookies is sent by Facebook to itself.

Plaintiff also alleges that Paramount discloses certain information about CBS.com users (*e.g.*, names and email addresses) to Facebook through a Pixel feature called Advanced

---

[4] The Court may consider the Facebook website because (a) it is judicially noticeable since it is publicly available and not reasonably subject to dispute, (b) Plaintiff references material from it (*e.g.*, FAC nn. 24, 25, 27, 29, ¶ 37), and (c) whether Paramount is involved in the disclosure is central to Plaintiff's claim. *See Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *George v. AMGEN, Inc.*, No. 18 C 6421, 2019 WL 10893813, at *2 n.1 (N.D. Ill. June 6, 2019) (judicial notice is "liberally applied, especially when the plaintiff does not dispute the authenticity of the documents attached").

Matching. *Id*. ¶¶ 40, 42. However, by Plaintiff's own admission, this information is "hashed," meaning that it "cannot be reversed back into the original data." *Id.* ¶ 36. In addition, Plaintiff does not specify whether she watched videos on CBS.com within close proximity of entering her information to create a CBS user account, calling into question her claim that the "Advanced matching parameters" were transmitted "alongside event data for videos." *Id.* ¶ 44.

Lastly, Plaintiff does not plausibly allege *how* Paramount is aware that PII and video watching information are transmitted to Facebook such that disclosure would enable an ordinary person to know what videos users watched. At most, Plaintiff alleges that the functionality of the Pixel and Advanced Matching, as well as the purposes of the Pixel and Advanced Matching to "build audiences on Facebook" and retarget CBS.com visitors for "advertising campaigns" evidence Paramount's knowledge of the alleged disclosures. *E.g., id.* ¶¶ 44, 76. But Plaintiff never adequately explains how Facebook combines Facebook IDs, browser identifiers, and Advanced Matching parameters with event data or how Paramount knows that Facebook does so.

Indeed, Plaintiff's assertions amount to only conclusory allegations that Paramount knew it was disclosing information that identified CBS.com visitors as having watched certain videos. *See id.* ¶ 3. Moreover, while Plaintiff alleges that with respect to the c_user cookie, that Paramount "knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior," with respect to the fr and _fbp cookies, the word "knowingly" is conspicuously absent: with respect to the fr and _fbp cookies, Plaintiff alleges only that Paramount "discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior." *Id.* ¶ 45-47.

## LEGAL STANDARD FOR MOTION TO DISMISS

Rule 12(b)(6) requires dismissal of a complaint that lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (citation omitted). "The complaint must do more than recite the elements of a violation; it must plead facts with sufficient particularity so that the right to relief is more than a mere conjecture." *DeServi v. Bryant*, 70 F. Supp. 3d 921, 924 (N.D. Ill. 2014). "Conclusory legal allegations are not entitled to" the assumption of truth, "unless supported by factual allegations that plausibly give rise to the entitlement of relief." *Tudela v. Medicredit, Inc.*, No. 21 C 5515, 2022 WL 2828754, at *1 (N.D. Ill. July 20, 2022) (citation omitted). Dismissal is appropriate where the factual allegations fail to "sufficiently raise a plausible right to relief above a speculative level." *MAUM Meditation House of Truth v. Lake County*, 55 F. Supp. 3d 1081, 1086 (N.D. Ill. 2014). In ruling on a 12(b)(6) motion, a court can consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice." *Geinosky*, 675 F.3d at 745 n.1.

## ARGUMENT

### I. Plaintiff did not comply with the CBS Terms of Use to which she consented.

Plaintiff's allegations indicate she assented to the CBS Terms of Use effective in 2021, and her claim should be dismissed for failure to comply with requirements set forth within these Terms of Use.[5] Indeed, Plaintiff indicates she created a CBS user account in 2021, and that when creating such CBS user accounts, CBS.com visitors assented to the CBS Terms of Use. *Supra* Background at 3-4 (FAC ¶ 53, Fig. 14). Courts have found the type of "clickwrap" consent shown in the Complaint at Figure 14 to suffice to establish the existence of a valid contract. *E.g., Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *4 (N.D. Ill. May 15, 2020) (alteration in original) (website Terms of Use bound plaintiff where the

[5] Section 16 of the CBS Terms of Use specifies application of California law, but the result is the same under both California/Ninth Circuit law and Illinois/Seventh Circuit law, as demonstrated herein. *See* Paramount, *CBS Terms of Use*, https://legal.paramount.com/us/en/cbsi/terms-of-use.

website (a) "included a button that said 'Accept' below the following statement: 'By tapping 'Accept', you agree to use [the service] in accordance with Shutterfly's Terms of Use," and (b) directed visitors to a page where they could view the Terms of Use); *Crawford v. Beachbody, LLC*, No. 14CV1583, 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (an "agreement constitutes a binding contract where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I Accept' button and clicks that button.").

Plaintiff's failure to comply with provisions in the CBS Terms of Use effective in 2021 requiring her to contact customer service regarding her claim, engage in informal negotiation, and mail a written notice of her claim to Paramount bar her claim. *See supra* Background at 4; *Fitzwilliam v. 1220 Iroquois Venture*, 598 N.E.2d 1003, 1011 (Ill. App. Ct. 1992) ("A contract must be enforced according to its terms or not at all"); *Meyers v. Guar. Sav. & Loan Assn.*, 144 Cal. Rptr. 616, 619 (Ct. App. 1978) ("Absent an ambiguity, adhesion contracts are enforced according to their terms"); *Kerr v. Pusateri*, 212 N.E.2d 263, 264-66 (Ill. App. Ct. 1965) (enforcing written notice requirement in insurance policy); *Williams v. Fed. Express Corp.*, No. CV 99-06252 MMM BQRX, 1999 WL 1276558, at *3-4 (C.D. Cal. Oct. 6, 1999) (enforcing written notice requirement in shipping service's terms and conditions). Because Plaintiff failed to take these required steps, her VPPA claim should be dismissed.

## II. Plaintiff failed to plausibly allege that Paramount violated the VPPA.

### A. Plaintiff has not plausibly alleged that Paramount disclosed PII.

The Complaint also fails because it does not plausibly establish that Paramount disclosed PII. The VPPA specifies that PII "includes information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). To constitute PII, "the information disclosed by a video tape service

provider must . . . identify a *particular* person—not just an anonymous individual—and connect this particular person with his or her viewing history." *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 179 (S.D.N.Y. 2015); *see also In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) ("The point of the VPPA, after all, is not so much to ban the disclosure of user or video data; it is to ban the disclosure of information connecting a certain user to certain videos."). Here, Plaintiff alleges Paramount transmits to Facebook information about what videos CBS.com visitors watched "alongside" (a) information from certain Facebook cookies, and (b) information collected via the Facebook Tracking Pixel's Advanced Matching feature. *Supra* Background at 5, 7 (FAC ¶¶ 44-47, 54). Plaintiff does not, however, plausibly allege that Paramount's conduct results in disclosure of PII in violation of the VPPA.

As to the c_user cookie, the question of whether Paramount has disclosed PII is academic, because by Plaintiff's admission, information from the c_user cookie is transmitted only if the website visitor is logged into Facebook while watching videos. FAC ¶¶ 23-25. Nowhere does Plaintiff allege she was logged into Facebook while watching videos. Despite asserting the c_user cookie is in fact transmitted, Plaintiff's failure to allege she was logged into Facebook means she has not plausibly alleged that information from the c_user cookie—*i.e.*, "unencrypted Facebook ID[s]"—were transmitted here. *Supra* Background at 5 (FAC ¶¶ 23, 55). *See also In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *8 n.5 (N.D. Cal. June 17, 2014) (citations omitted) ("[L]ogging out of Facebook clears the c_user cookie.").

The other cookies Plaintiff asserts allow "an ordinary person" to identify an individual's video watching behavior are the fr and _fbp cookies, which contain encrypted Facebook IDs and browser identifiers. *Supra* Background at 5 (FAC ¶¶ 25, 28). But these cookies do not transmit PII as defined by the VPPA. As to the fr cookie, Plaintiff never alleges that ordinary persons

could unencrypt the fr cookie's Facebook ID, an ID which is encrypted by Facebook. Indeed, another court found specifically with regard to the fr cookie that there was "no binding precedent" to support the argument that it constituted PII. *Bernardino v. Barnes & Noble Booksellers, Inc*., No. 17CV04570LAKKHP, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017), *adopted by*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017). Moreover, according to the same report Plaintiff cites in footnote 23 of the Complaint, the Facebook ID in the fr cookie is "re-encrypted every hour," making it even more unlikely that an ordinary person could use it to identify specific CBS.com visitors. Data Protection Comm'r, *Facebook Ireland Ltd: Report of Re-Audit* at 33 (Sept. 21, 2012), http://www.europe-v-facebook.org/ODPC_Review.pdf.[6] As to browser identifiers, which are allegedly contained in both the fr and _fbp cookies, Plaintiff offers no explanation as to how browser identifiers identify a particular person, rather than an "anonymous individual." *Disney*, 152 F. Supp. 3d at 179. For these reasons, Plaintiff does not plausibly allege that either the fr cookie or the _fbp cookie transmit PII.

Furthermore, regardless of who places these cookies on user's browsers—and the c_user and fr cookies are always placed by Facebook (not Paramount)—these are Facebook's cookies, meaning any information sent from the cookies is sent by Facebook to itself. *Supra* Background at 6 (*supra* note 4; Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/.) Because these are Facebook's cookies, Plaintiff has failed to plausibly allege Paramount's involvement in disclosures via these cookies for purposes of establishing that Paramount violated the VPPA. Indeed, it is "the information actually 'disclose[d]' by a 'video tape service provider,' which must itself do the identifying that is relevant for purposes of the VPPA . . . not information disclosed by a provider, plus other pieces of information collected elsewhere by non-

[6] The Court may consider documents cited in the Complaint in resolving this motion. *Supra* notes 2-4.

defendant third parties." *Disney*, 152 F. Supp. 3d at 182 (citation omitted).

As to Advanced Matching, Plaintiff admits that any information disclosed to Facebook through Advanced Matching (*e.g.*, names and email addresses) is "hashed." *Supra* Background at 7 (FAC ¶ 36). This means the information "cannot be reversed back into the original data." *Id.* (Information cited in Plaintiff's Complaint at footnote 39 confirms that hashing transforms information into strings of numbers and letters which are not decipherable by ordinary persons. Meta for Developers, *Advanced Matching*, https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching (last visited Sept. 2, 2022).[7]) In addition, Plaintiff does not specify whether she watched videos on CBS.com within close proximity of entering her information to create a CBS user account, calling into question her claim that the "Advanced matching parameters" were transmitted "alongside event data for videos." *Id.* ¶ 44. The alleged use of Advanced Matching thus cannot lead to disclosure of "information that would readily permit an ordinary person to identify a specific individual's video-watching behavior[,]" which the Court should adopt as the standard for PII here. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284, 290 (3d Cir. 2016). The Third Circuit's articulation as to what constitutes PII under the VPPA was recently endorsed by another court deciding a similar case. *Wilson v. Triller, Inc.*, No. 21-cv-11228 (JSR), 2022 WL 1138073, at *5-6 (S.D.N.Y. Apr. 18, 2022).

**B. Plaintiff has not plausibly alleged that Paramount "knowingly" disclosed PII**.

Even if Plaintiff did adequately allege that Paramount disclosed PII, she has not sufficiently alleged that Paramount *knowingly* disclosed information that "identifies a person as having requested or obtained specific video materials." 18 U.S.C. §§ 2710(b)(1); 2710(a)(3). To satisfy this pleading requirement, Plaintiff must allege facts making it plausible that Paramount

[7] The Court may consider materials cited in the Complaint in resolving the motion. *Supra* notes 2-4.

knew that the information it disclosed identified specific individuals as having "requested or obtained specific video materials," which she has not done. *Hulu*, 86 F. Supp. 3d at 1091, 1105 (dismissing VPPA claim against Hulu where plaintiffs could not establish whether "Hulu knew that Facebook might link the user-identifying information in the c_user cookie with title-bearing watch-page addresses" to construct PII).

As a preliminary matter, Plaintiff does not even allege that Paramount knowingly disclosed "information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior" with respect to the fr and _fbp cookies. FAC ¶¶ 46-47. Indeed, the word "knowingly" is noticeably absent from her allegations relating to the fr and _fbp cookies. Plaintiff's allegations that Paramount knowingly disclosed PII are directed toward only the c_user cookie and information collected via Advanced Matching. *Id.* ¶¶ 44-45.

With respect to Advanced Matching and the c_user cookie, Plaintiff here does not sufficiently allege facts making it plausible that Paramount ever knew that video watching information, Advanced Matching parameters, and unencrypted Facebook IDs were transmitted such that Facebook did "combine those discrete things to reconstruct PII" as is required to state a VPPA claim. *Hulu*, 86 F. Supp. 3d at 1098. Indeed, Plaintiff does not plausibly allege how Paramount knows that information was transmitted to Facebook such that an "ordinary person" would be able to determine what videos specific CBS.com visitors watched. *Nickelodeon*, 827 F.3d at 284, 290; *supra* Background at 7. Plaintiff's "knowing" disclosure allegations can thus be boiled down to (a) conclusory allegations simply asserting that Paramount indeed knew it disclosed information identifying CBS.com visitors' video watching histories to Facebook, and (b) allegations that Paramount's knowledge can be inferred from the functionality and purpose of the Facebook Tracking Pixel and Advanced Matching, including because the Pixel enables

Paramount to run targeted advertising. *Supra* Background at 7 (FAC ¶¶ 3, 5, 44-45).

The fact the Pixel enables targeted advertising does not bear on Paramount's knowledge; the allegation ignores (a) that Advanced Matching hashes information (thereby obfuscating the information), and (b) that information about CBS.com visitors could be aggregated (anonymized) and allow for targeting. Moreover, as to Plaintiff's claim that the functionality of the Pixel and Advanced Matching demonstrates Paramount's knowledge, it is not enough for Plaintiff to simply allege that Paramount transmits information sufficient for reconstructing PII by a third party. *Hulu*, 86 F. Supp. 3d at 1097-98; *Disney*, 152 F. Supp. 3d at 183 (if a third party has to "reverse engineer" PII, there can be no knowing disclosure).

Indeed, the "knowledge element of the VPPA violation is intertwined with the definition of PII." *Bernardino*, 2017 WL 3727230, at *9. If, as here, a defendant "did not think it was conveying PII, then there could be no knowledge of the conveyance." *Id.* Relatedly, under the VPPA, Paramount is responsible for understanding the "nature of the information actually disclosed," not "the informational capabilities of any third-party recipient" like Facebook. *See Disney*, 152 F. Supp. 3d at 181-82. So, even if Paramount knew what Facebook might do with information collected, which it does not, that would be insufficient to plausibly allege Paramount's knowledge. *Bernardino*, 2017 WL 3727230, at *9 (alteration in original) ("[W]hether [defendant Barnes & Noble] knew what Facebook might do with the information" was irrelevant to the VPPA knowledge inquiry). In sum, merely alleging that Paramount uses the Facebook Tracking Pixel and Advanced Matching and explaining the tools' functionality—without also sufficiently alleging that Paramount knew that it was conveying to Facebook information about what videos specific users watched—does not state a claim under the VPPA.

## CONCLUSION

For the foregoing reasons, Paramount respectfully requests that the Court dismiss the Complaint in its entirety.

Dated: New York, New York
September 8, 2022

Respectfully submitted,

*/s/ David L. Yohai*

David L. Yohai (admitted *pro hac vice*)
Blake J. Steinberg (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
blake.steinberg@weil.com

David R. Singh (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
david.singh@weil.com

Brian A. Sher
Steven G. Trubac
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601
Telephone: (312) 602-5000
Facsimile: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

*Attorneys for Paramount Global*