**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| SHARON PARCELL, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br> v. <br><br> PARAMOUNT GLOBAL CORP., <br><br> Defendant. | Civil Action No. <br><br> 1:22-cv-03666 |

**MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO COMPEL ARBITRATION,
DISMISS CLASS CLAIMS, AND STAY ALL PROCEEDINGS**

**INTRODUCTION**

Defendant's motion seeks to dismiss Plaintiff's complaint by arguing that she must submit her claim to arbitration. Only two words are necessary to defeat that motion: "or around."

Defendant develops, owns, and operates CBS.com, a website that hosts television shows and other video media content. Plaintiff is an Illinois resident and subscriber of Defendant's video hosting platform who visited the website to, among other things, watch those shows. Unbeknownst to Plaintiff, each time she did that, Defendant knowingly disclosed her personally identifiable information alongside her viewing habits to Facebook. By doing so, Defendant violated the Video Privacy Protection Act.

Defendant now moves to compel arbitration. To support that motion, Defendant introduces two contracts as exhibits, the 2017 ToS and the 2021 ToS, both of which include arbitration provisions and neither of which were effective at the time Plaintiff filed her complaint in July of 2022. Defendant also submits a declaration from Jon Mantell, the Executive Vice President for Paramount Streaming, averring that, "at all points in 2021," users must have assented to either the 2017 or 2021 ToS when creating an account. Defendant submits no evidence establishing the date Plaintiff's account was created, instead arguing that, "by her own allegations," Plaintiff agreed to an arbitration provision. Plaintiff's allegations, however, state she created an account "in or around 2021," an approximation broader than "at all points in 2021." While subtle, this difference is more than a semantic distinction. In February 2022, a time period undeniably "around 2021," the CBS website linked to a third contract, the 2022 ToS, which contained no arbitration provision. Defendant never addresses or acknowledges this third contract. By failing to do so, Defendant cannot establish that a valid arbitration agreement exists. On that basis alone, the motion must be denied.

1

The motion also must be denied for three additional reasons. *First*, by the express terms of all three contracts, the 2022 ToS superseded and unilaterally modified previous agreements. *Second*, by adding the supersession and unilateral modification provisions, Defendant is estopped from now seeking to compel arbitration. *Third*, for that same reason, Defendant has waived the right to enforce an arbitration provision.

## LEGAL STANDARD

"[A]rbitration is a creature of contract." *Sgouros v. TransUnion Corp.*, 817 F.3d 1029, 1033 (7th Cir. 2016). Consequently, "a party cannot be compelled to submit any dispute to arbitration that he has not agreed to so submit." *Johnson v. Orkin, LLC*, 928, F. Supp. 2d 989, 1000 (N.D. Ill. 2013). Arbitration can only be compelled "if the following three elements are shown: a written agreement to arbitrate, a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." *Zurich American Ins. Co. v. Watts Industries, Inc.*, 417 F.3d 682, 687 (7th Cir. 2005). "The applicable standard is akin to a Rule 56 summary judgment standard, and the district court must accept the non-movant's evidence as true, drawing all reasonable inferences in his favor." *Sanato v. Sears, Roebuck and Co.*, 259 F. Supp. 3d 873, 875 (N.D. Ill. 2016).

## ARGUMENT

**I. DEFENDANT HAS INTRODUCED NO EVIDENCE DEMONSTRATING THAT A VALID ARBITRATION AGREEMENT EXISTS**

Defendant argues that an agreement to arbitrate exists because "[a]t all times in 2021, the[] Terms of Use required disputes to be resolved through binding arbitration or in small claims court." *See* Defendant's Memorandum of Law in Support of Defendant's Opposed Motion to Compel Arbitration, Dismiss Class Claims, and Stay All Proceedings at 1 (ECF No. 18) ("MTC"). That argument fails, however, because there are three contracts at issue—two with an arbitration

provision, one without—and Defendant has introduced no evidence identifying the contract to which Plaintiff agreed.

"Whether a binding arbitration agreement exists is determined under principles of state contract law." *Bahoor v. Varonis Systems, Inc.*, 152 F. Supp. 3d 1091, 1097 (N.D. Ill. 2015). In Illinois, as with virtually every jurisdiction, "[c]ontract formation requires an offer, acceptance, and consideration, in conjunction with an objective manifestation of mutual assent." *Gamboa v. Proctor & Gamble Co.*, 2022 WL 1639559, at *2 (N.D. Ill. May 24, 2022). "The party seeking to compel arbitration has the burden of establishing an agreement to arbitrate." *Wilcosky v. Amazon.com, Inc.*, 517 F. Supp. 3d 751, 759 (N.D. Ill. 2021). As a corollary, "[c]ompulsion of arbitration is inappropriate where the proponent of arbitration fails to produce evidence that an agreement to arbitrate existed." *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015). "Only after the proponent has introduced such evidence does the burden shift to the opponent of the evidence to rebut the evidence of authenticity." *Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015); *see also McGhee v. North American Bancard, LLC*, 755 Fed. App'x. 718, 720 (9th Cir. 2019) (observing that Defendant must first "make the 'prima facie' showing that [Plaintiff] assented to the … arbitration clause"; otherwise, it is "unnecessary for [Plaintiff] to provide rebutting evidence").

To support the argument that Plaintiff agreed to arbitrate her claims, Defendant relies on two premises and an ultimate conclusion: First, that Plaintiff alleges she created an account "[i]n or around 2021[.]" Class Action Complaint ¶ 53 (ECF No. 1) ("Compl."). Second, that the CBS website, "[a]t all times in 2021[,]" required users to agree to a ToS that contained an arbitration provision. MTC at 2. From this, Defendant concludes that, "by Plaintiff's own allegation, she

3

would have consented to these Terms of Use when creating her CBS user account, and her claim should be sent to individual, binding arbitration." *Id.*

This syllogism is invalid; indeed, "[p]ractitioners of logic will recognize this as the fallacy of the undistributed middle term." *Infonow Corp. v. Zyme Solutions, Inc.*, 2013 WL 4052183, at *3, n. 3 (D. Col. Aug. 6, 2013). Put less formally, the temporal scope for the first premise, "in or around 2021," is broader than the second premise, "in 2021." By ignoring the "or around" caveat, Defendant's deduction—that, "by Plaintiff's own allegations," she agreed to arbitration—cannot follow. *See Atlantic Aluminum & Metal Distributors, Inc. v. United States*, 47 C.C.P.A. 88, 90 (1960) ("The undistributed middle term prevents reliance upon the premises to support the [defendant's] conclusion."); *see also Aylett v. Secretary of Housing and Urban Development*, 54 F.3d 1560, 1569 (10th Cir. 1995) (observing that "[w]hen an undistributed middle term is present, the conclusion cannot be justified"); *Lucas Aerospace, Ltd. v. Unison Industries, L.P.*, 899 F. Supp. 1268, 1287 (D. Del. 1995) (rejecting the following syllogism as a fallacy of the undistributed middle term: "Exciters never made, use, or sold in the United States are noninfringing; a substantial number of Lucas exciters are never made, used, or sold in the United States; therefore, all Lucas exciters, whether used or sold in the United States or not, have a substantial noninfringing use").

Defendant's fallacious reasoning is neither an accident nor an oversight. As Defendant is well-aware, a different contract, one without an arbitration provision, governed the website from February 2022 to the day Plaintiff filed her complaint. *See* Klinger Decl. ¶ 3. Because February 2022 is indisputably "around 2021," Plaintiff's allegation puts three contracts at issue—the 2017 ToS, the 2021 ToS, and the 2022 ToS—while only two potentially possess a valid arbitration agreement. *See* Declaration of Jon Mantell ("Mantell Decl."), Ex. B § 2 (ECF No. 19-2) ("2021 ToS"); Mantell Decl., Ex. D § 17 (ECF No. 19-4) ("2017 ToS"); Declaration of Gary Klinger in

4

Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration, Dismiss Class Claims, and Stay all Proceedings ("Klinger Decl."), Ex. A. § Location/Governing Law ("2022 ToS"). Defendant offers no evidence clarifying this ambiguity, and Plaintiff is under no obligation to do so herself. *Pearson, LLC*, 123 F. Supp. 3d at 1074 (observing that "even if [defendant] is correct that [Plaintiff's] affidavit does not specifically deny or provide evidence to dispute the document, it was not yet his burden to provide such information").

Without such evidence, Defendant cannot show that there exists an arbitration agreement to which Plaintiff is bound. *See Pearson v. United Debt Holdings, LLC*, 123 F. Supp. 3d 1070, 1073 (N.D. Ill. 2015) ("Pearson agrees, of course, that he entered into *an* agreement with Plain Green . . . . Contrary to UDH's characterizations, though, nowhere in either his affidavit or his brief does Pearson concede that he entered into *this* agreement."); *Snow v. Eventbrite, Inc.*, 2020 WL 6135990, at *10 (N.D. Cal. Oct. 19, 2020) ("As explained, there is no evidence that the versions of the 2016 and present mobile web checkout pages Eventbrite puts forward are the versions that would have existed at the relevant times."). Moreover, as demonstrated below, by accessing and using the website between February 16, 2022 and July 2022 when she filed her Complaint, Plaintiff was forced to accept the 2022 ToS which removed the arbitration clause and was the "entire and exclusive agreement [] regarding use of the Site, supersed[ing] all prior understandings of the parties[]" 2022 ToS § Miscellaneous; *see Fitzwilliam v. 1220 Iroquois Venture*, 598 N.E.2d 1003, 1011 (Ill. App. Ct. 1992) ("A contract must be enforced according to its terms or not at all").

## II. DEFENDANT UNILATERIALLY MODIFIED ANY PRIOR AGREEMENT BY LINKING A NEW TERMS OF SERVICE TO ITS WEBSITE

Even if the record somehow supports the notion that Plaintiff agreed to the 2017 or 2021 ToS, there is still no valid arbitration provision because the 2022 ToS modified those prior

5

agreements and removed those provisions. And Plaintiff agreed to the superseding 2022 ToS by accessing and using the website in June of 2022 while that agreement governed use of the website. *See* Declaration of Sharon Parcell in Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration, Dismiss Class Claims, and Stay all Proceedings ("Parcel' Decl.") ¶ 3.

"Illinois courts allow parties to agree to authorize one party to modify a contract unilaterally." *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *5 (N.D. Ill. May 15, 2020).[1] Moreover, "when parties agree in advance to allow unilateral modifications to the terms of their contract, subsequent modifications are binding regardless of whether the other party later 'accepts' the change." *Id.*; *see also id.* ("Illinois courts have additionally rejected the argument that notice of an amendment is necessary to create 'mutual assent' to the amended contract."). Alternatively, "[a] contract is validly modified if the party which did not propose the change is shown to acquiesce in the modification through a course of conduct consistent with acceptance." *Richelieu Foods, Inc. v. New Horizon Warehouse Distribution Center, Inc.*, 67 F. Supp. 3d 903, 914 (N.D. Ill. 2014).

---

[1] Defendant cites to both California and Illinois law, *see generally* MTC, and suggests that there is no conflict. *See id.* at 9, n.8 (stating that the result will be the same "[r]egardless of whether California/Ninth Circuit law or Illinois/Seventh Circuit law is applied"). Because both parties "fail to raise a possible conflict of substantive law … the substantive law of the forum controls." *See Gonzalez v. Volvo of America Corp.*, 752 F.2d 295, 299 (7th Cir. 1985); *see also Kochert v. Adagen Medical Intern., Inc.*, 491 F.3d 674, 677 (7th Cir. 2007) (applying the forum state's law where "[n]either party argues that the application of Georgia law (pursuant to the contract's choice-of-law provision) would alter the outcome of the case"); *Gould v. Artisoft*, 1 F.3d 544, 549, n.7 (7th Cir. 1993) (applying Illinois law where the defendant "takes no position as to whether Illinois or Arizona law controls" and the plaintiff "cites only to Illinois cases"); *Miracle-Pond*, 2020 WL 2513099, at *5 ("[R]egarding unilateral modifications and retroactive arbitration, California law and Illinois law do not compel different results."); *Busch v. Globe Industries*, 200 Cal. App. 3d 315, 320 (2d Dist. 1962) ("When a modification is in accordance with a provision authorizing and setting forth a method for its revision the rule that a contract in writing may be altered only by another written contract or an executed oral agreement has no application because there is no alteration.").

Both the 2017 and 2021 ToS contain the same language regarding unilateral modification:

> We may change these Terms in the future, so we encourage you to review periodically the Terms of Use applicable to each Service you use. The most current version of the applicable Terms of Use (along with its effective date) will be linked from each of the Services. If you do not agree with any changes to these Terms, your sole remedy is not to use the Services. If you continue to use the Services after we change these Terms, you accept all changes.

*See* 2021 ToS § 1; 2017 ToS § 1.

Both contracts also state in identical terms that the most recent agreement supersedes all previous ones, and the 2022 ToS, though worded slightly differently, states the same. *See id.* ("These Terms, including all additional terms, conditions, and policies on the Services, constitute the entire agreement between you and us and supersede all prior agreements with respect to the subject matter hereof."); *see also* 2022 ToS § Miscellaneous. ("These Terms of Use contain the entire and exclusive agreement between you and us regarding use of the Site, supersede all prior understandings of the parties hereto relating to the subject matter hereof and cannot be modified, except as specifically described herein.") ("2022 ToS").

The provisions allowing for supersession and unilateral modification are fully enforceable. *See, e.g., Carroll v. Stryker Corp.*, 658 F.3d 675, 683 (7th Cir. 2011) ("A contract can be modified by future agreement, and [employer's] reservation of the right to modify the pay plan does not make this an illusory contract."); *see also, e.g., Williams v. TCF Nat'l Bank*, 2013 WL 708123, at *6, *9 (N.D. Ill. Feb. 26, 2013) (enforcing revised arbitration provision added via change-in-terms clause); *Sherman v. AT&T Inc.*, 2012 WL 1021823, at *4 (N.D. Ill. Mar. 26, 2012) (same, because "[t]he Court finds that [the plaintiff] agreed to a contract with a change-in- terms-provision"); *Rosen v. SCIL, LLC*, 799 N.E.2d 488, 494 (Ill. App. Ct. 2003) (enforcing arbitration provision added to cardholder agreement, because "[i]f plaintiff did not wish to agree to the new terms in his credit card agreement, he simply should have stopped using the card."); *Hutcherson v. Sears*

7

*Roebuck & Co.*, 793 N.E.2d 886, 888 (Ill. App. Ct. 2003) (enforcing arbitration provision added via change-in-terms clause).

*Miracle-Pond* is on point:

> In 2014, Ms. Miracle-Pond entered into a service contract that explicitly gave Shutterfly's the right to unilaterally modify the agreement at any time and without notice, other than posting the modified terms on their website. It is undisputed that Shutterfly posted the modified Terms of Use on its website in May 2015. Ms. Miracle-Pond indicated her acceptance to the modified Terms of Use by continuing to use Shutterfly products. Her arguments regarding lack of notice are thus unavailing. Ms. Miracle-Pond is accordingly bound by the 2015 modifications to the Terms of Use.

2020 WL 2513099, at *6. Here, the 2017 and 2021 ToS instructs subscribers to "review periodically the Terms of Use applicable to each Service you use[,]" and if they "do not agree with any changes to these Terms," then "[their] sole remedy is not to use the Services." *See* 2017 ToS § 1; 2021 ToS § 1. Because "[i]n June 2022, [Plaintiff] frequently accessed CBS.com to watch videos," she assented to those terms and the 2022 ToS governed at the time she filed her complaint. *See* Parcell Decl. ¶ 3. These facts mirror those of *Miracle-Pond* and should compel the same result.

### III. DEFENDANT IS ESTOPPED FROM SEEKING TO ENFORCE AN ARBITRATION PROVISION

Having failed to address the 2022 ToS, Defendant cannot show an arbitration agreement exists in the first place, but even if it could, Defendant is estopped from invoking those provisions because it represented to Plaintiff that those provisions were no longer part of the agreement governing her use of the website.

"Equitable estoppel may be defined as the effect of A's conduct whereby A is barred from asserting rights that might otherwise have existed against B who, in good faith, relied upon such conduct and has been thereby led to change his or her position for the worse." *In re Scarlett Z.-*

8

*D.*, 2015 IL 117904 ¶ 25 (2015).[2] Because "[t]he purpose of equitable estoppel is to prevent fraud and injustice[,]" *see In re Marriage of Simmons*, 355 Ill. App. 3d (1st Dist. 2005), "the representation need not be fraudulent in the strict legal sense or done with an intent to mislead or deceive." *Geddes v. Mill Creek Country Club, Inc.*, 751 Ill.2d 302, 314 (2001). Instead, "it is sufficient that a fraudulent or unjust effect from allowing another person to raise a claim inconsistent with his or her former declarations." *In re Scarlett Z.-D.*, 2015 IL 117904 ¶ 26. Ultimately, "[t]he test is whether, considering all the circumstances, conscience and the duty of honest dealing should deny one the right to repudiate the consequences of his or her representations or conduct." *Id.* To satisfy this test, Plaintiff must meet six elements; each is addressed in turn.

*First*, Defendant "misrepresented or concealed material facts[.]" *See id.* As an initial matter, the existence of an arbitration provision is a material fact. *Cf. Northwest 1 Trucking Inc. v. Haro*, 2020 WL 1974379, at *13 (N.D. Ill. Apr. 24, 2020) ("There is widespread agreement in courts across the country that a forum selection clause is a material alteration of a contract within the meaning of Section 2-207, absent a course of dealing between the parties."). Defendant misrepresented this material fact by posting updated terms. *Compare* 2021 ToS § 1 (directing subscribers to "review periodically the Terms of Use" because "[t]he most current version of the

---

[2] State law governs Plaintiff's estoppel defense, *see Pagan v. Integrity Solutions Services, Inc.*, 42. F. Supp. 3d 932, 934 (E.D. Wisc. 2014) (observing in analogous circumstances that "federal appellate courts have held that the issue governed by state law"), and there is no conflict with California law that would lead to a different result. *See, e.g.*, *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*, 144 Cal. App. 4th 1175, 1189 (3d Dist. 2006) (stating that equitable estoppel "provides that a person may not deny the existence of a state of facts if he intentionally led another to believe a particular circumstance to be true and to rely upon such belief to his detriment"); *City of Hollister v. Monterey Ins. Co.*, 165 Cal. App. 4th 455, 488 (6th Dist. 2008) (describing equitable estoppel as having three elements: "(1) The party to be estopped has engaged in blameworthy or inequitable conduct; (2) that conduct caused or induced the other party to suffer some disadvantage; and (3) equitable considerations warrant the conclusion that the first party should not be permitted to exploit the disadvantage he has thus inflicted upon the second party").

applicable Terms of Use (along with its effective date) will be linked from each of the Services") *with* 2022 ToS (excluding any arbitration provision and declaring that the updated terms "contain[ed] the entire and exclusive agreement between you and us regarding use of the Site" and "supersede[d] all prior understandings of the parties hereto").

*Second*, Defendant "knew at the time the representations were made that the representations were untrue[.]" *In re Scarlett Z.-D.*, 2015 IL 117904 ¶ 26. Defendant evinced this understanding by filing a motion to compel arbitration. *See Vaughn v. Speaker*, 126 Ill.2d 150, 162 (1988) ("This knowledge need not be actual but may be implied; misrepresentations made with gross negligence can form a basis for equitable estoppel."); *Geddes*, 196 Ill.3d at 314 ("Although fraud is an essential element, it is sufficient that a fraudulent or unjust effect results from allowing another person to raise a claim inconsistent with his or her former declarations."); *Falcon Funding, LLC v. City of Elgin*, 399 Ill App. 3d 142, 158 (2010) (observing that "[t]he City need not show that petitioner intentionally misled or deceived it") (internal quotations omitted).

*Third*, Plaintiff "did not know that the representations were untrue when they were made and when they were acted upon[.]" *See In re Scarlett Z.-D.*, 2015 IL 117904 ¶ 26. This is corroborated by where Plaintiff decided to file her complaint—federal court. *See Anderson v. Holy*, 878 F. Supp. 2d 923, 935 (N.D. Ill. 2012) ("[T]he party claiming estoppel must act in order to complete the estoppel.").

*Fourth*, Defendant "intended or reasonably expected the representations to be acted upon by the party claiming estoppel or by the public generally[.]" *See In re Scarlett Z.-D.*, 2015 IL 117904 ¶ 26. Defendant required users to "read and agree to the Terms of Use" before clicking "continue" and creating an account. *See* Mantell Decl. Ex. C (ECF No. 19-3). Defendant thus intended Plaintiff to believe that they both must abide by the representations within that contract.

10

*See generally Abbott Laboratories v. Alpha Therapeutic Corp.*, 164 F.3d 385, 387 (7th Cir. 1999) ("Under Illinois contract law, a binding agreement requires a meeting of the minds or mutual assent as to all material terms.").

*Fifth*, Plaintiff "reasonably relied upon the representations in good faith to … her detriment[.]" *See In re Scarlett Z.-D.*, 2015 IL 117904 ¶ 26. Plaintiff's reliance was reasonable because she acted in accordance with Defendant's contractual representations. *See Geddes*, 196 Ill.2d at 316-17 (finding "defendants reasonably relied upon plaintiffs' conduct to their detriment" where plaintiffs "act[ed] in a manner contrary to the agreement").

*Sixth*, Plaintiff "has been prejudiced by [] her reliance on the representations." *See In re Scarlett Z.-D.*, 2015 IL 117904 ¶ 26. Plaintiff has already incurred the time and cost of filing in federal court. Moreover, according to Defendant, Plaintiff also forfeited the right "to resolve her claim through informal negotiation or by filing an action in small claims court[.]" MTC at 7 (citing 2021 ToS). Additionally, if the 2017 or 2021 ToS bind Plaintiff, then she has lost time to pursue her claim. *See* 2021 ToS § 16 (requiring consumers to "file any claim or action related to use of the Services or these Terms within one year after such claim or action has accrued"); 2017 ToS § 16 (same); *see also* Compl. ¶ 57 (alleging she first discovered her injury "in July 2022"); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 450 (7th Cir. 1990) (observing that a claim begins to accrue when a plaintiff "discovers he has been injured"). Plaintiff has therefore shown prejudice, and because the other five elements are each satisfied, "equity and good conscience" require that Defendant be estopped from compelling Plaintiff's claim to arbitration. *Union Cent. Life Ins. Co. of Cincinnati, Ohio v. Anderson*, 291 Ill. App. 2d 423 (2d Dist. 1937).

11

## IV. DEFENDANT WAIVED THE RIGHT TO ENFORCE AN ARBITRATION AGREEMENT

By linking the 2022 ToS to CBS.com, Defendant also waived the right to compel arbitration as the 2022 ToS effectively abrogated the arbitration provision.

"A contracting party may waive a contractual provision intended to benefit that contracting party." *Takiff Properties Group Ltd. #2 v. GTI Life, Inc.*, 2018 Ill App (1st) 171477 ¶ 26 (2018). Waiver is "the intentional relinquishment of a known right." *Ryder v. Bank of Hickory Hills*, 146 Ill.2d 98, 104 (1991).³ "Unlike estoppel, a party asserting a waiver need not demonstrate that he was misled to his injury or that prejudice resulted from it." *Anderson v. Catholic Bishop of Chicago*, 759 F.3d 645, 651 (7th Cir. 2014). "Waiver may be made by an express agreement or it may be implied from the conduct, acts or words of the party who is alleged to have waived a right." *Delta Consulting Group, Inc. v. R. Randle Const., Inc.*, 554 F.3d 1133, 1140 (7th Cir. 2009). A waiver is implied "when a party's conduct is inconsistent with an intention to assert the right." *PPM Finance v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004). That showing can be made by establishing "either of two situations: (1) an unexpressed intention to waive can be clearly inferred from the circumstances; or (2) the conduct of one party has misled the other party into a reasonable belief that a waiver has occurred." *Batterman v. Consumers Illinois Water Co.*, 261 Ill. App. 3d 319, 321 (1994); *Takiff*, 2018 Ill App (1st) 171477 at ¶ 26. "Waiver also may be shown by facts from which it would appear that the enforcement of the provision would be unjust

---

³ There is no conflict with California law. *See, e.g.*, *Nordstrom Com. Cases*, 186 Call. App. 4th 576, 583 (4th Dist. 2010) ("A waiver is the relinquishment of a known right."); *Cavalry SPV I, LLC v. Watkins*, 36 Cal. App. 5th 1070 (4th Dist. 2019) (observing that "[a] waiver can be expressly stated or implied by conduct"); *Harper v. Kaiser Cement Corp.*, 144 Cal. App. 3d 616, 619 (1st Dist. Cal. 1983) ("Waiver may occur … by conduct so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished."); *Panno v. Russo*, 82 Cal. App. 3d 408, 454-55 (2d Dist. Cal. 1947) (stating waiver can be "inferred from circumstances indicating an intent to waive").

or unconscionable." *Mathis v. Lumbermen's Mut. Cas. Ins. Co.*, 354 Ill. App. 3d 834, 858 (5th Dist. 2004).

The 2017 and 2021 ToS declare unequivocally that Defendant "may change these Terms in the future" and that "[t]he most current version of the applicable Terms of Use (along with its effective date) will be linked from each of the Services." *See* 2021 ToS § 1; 2017 ToS § 1. The 2022 ToS is equally unequivocal, stating that the contract "contain[s] the entire exclusive agreement between you and us regarding use of the Site," and "supersede[s] all prior understandings of the parties hereto[.]" *See* 2022 ToS § Miscellaneous. These terms, which were linked to CBS.com, went into effect February 16, 2022, and Plaintiff's counsel read them prior to filing suit, noting that they contained no arbitration provision. *See* Klinger Decl. ¶ 3. Defendant is "presumed to know the content of its own policy[,]" and so by posting the 2022 ToS, Defendant impliedly waived the right to require Plaintiff to arbitrate her claim. *See Home Ins. Co. v. Cincinnati Ins. Co.*, 213 Ill. 2d 307, 237 (2004); *see also Board of Managers of Park Point at Wheeling Condominium Ass'n v. Park Point at Wheeling, LLC*, 2015 Il App (1st) 123452 ¶ 36 (2015) (observing that a waiver exists where "the language of a contract is so clear and so conspicuous that no other reasonable conclusion could be reached"); *cf. Western Railway Equipment Co. v. Missouri Malleable Iron Co.*, 91 Ill. App. 28, 37 (4th Dist. 1900) (finding that a new contract "completely superseded the first contract" and because "the matter of royalties or commissions is not mentioned in the last contract, no claim for them can be enforced").

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion to Compel Arbitration, Dismiss Class Claims, and Stay All Proceedings should be denied in full.

Dated: October 20, 2022  Respectfully submitted,

By: /s/ *Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
Telephone: (866) 252-0878
gklinger@milberg.com

Nick Suciu III
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Tel: 313-303-3472
nsuciu@milberg.com

Joshua D. Arisohn*
Philip L. Fraietta
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
         pfraietta@bursor.com

Christopher R. Reilly*
**BURSOR & FISHER, P.A.**
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 679-9006
E-Mail: creilly@bursor.com

*Pro Hac Vice Application Forthcoming*

*Attorneys for Plaintiff and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned certifies that on October 20, 2022, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: <i>/s/ Gary M. Klinger</i><br>Gary M. Klinger