# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| SHARON PARCELL, individually and on behalf of all others similarly situated, ) ) ) Plaintiff, ) ) v. ) ) PARAMOUNT GLOBAL, ) ) Defendant. ) | No. 1:22-cv-03666-JFK<br>Judge John F. Kness |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS PURSUANT TO FED R. CIV. P. 12(b)(6)**

**INTRODUCTION**

The Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was passed in 1988 to protect people's private video viewing habits from disclosure because, as Senators Leahy and Simon recognized, this type of information offers "a window into our loves, likes, and dislikes" because the "the trail of information generated by every transaction that is now recorded and stored in sophisticated record-keeping systems is a new, more subtle and pervasive form of surveillance." S. Rep. No. 100-599 at 708 (1988). That is precisely what Defendant Paramount Global ("Defendant" or "Paramount") does: it discloses to Facebook—a notorious abuser of consumer personal information—what video content Plaintiff and other users watch on their phones, tablets, and computers, thus revealing their private viewing habits—including their loves, likes, dislikes, and even the feelings expressed in their comments. By disclosing Plaintiff's and Class Members' viewing information to Facebook alongside their identities, Paramount violated the VPPA.

Nonetheless, Paramount asks this Court to dismiss Plaintiff's Class Action Complaint ("Complaint" or "Compl.") because, according to Paramount, Plaintiff did not comply with Defendant's self-serving dispute resolution in its purported Terms of Use ("Terms"), and she is thus barred from relief. However, the Terms were neither referenced in nor central to the pleadings and it is improper to consider them here. Defendant's next attempt to dismiss Plaintiff's claims incredulously asserts that the data collected and disclosed by Defendant did not constitute PII for various reasons. As demonstrated below, this argument is without merit, and the Legislature intended the VPPA's definition of PII to be broadly construed. Finally, because Paramount intentionally, knowingly, and willfully installed a Facebook tracking pixel designed to monitor how consumers interact with its website and then shared those interactions with Facebook, Defendant's plea of ignorance as to its "knowledge" of the disclosure is unconvincing. Not only

did Paramount decide to implement the tracking pixel with full knowledge of its functionality, it also selected what information (e.g., video content, identifying information) would be shared with Facebook and failed to disclose to Plaintiff that it was doing so in violation of the VPPA. For these reasons, explained more fully below, Defendant's Motion to Dismiss this case should be denied.

## BACKGROUND

Defendant Paramount Global is a Delaware corporation with its principal place of business at 51 West 52nd Street, New York, NY 10019. Compl. ¶ 59. Paramount develops, owns, and operates CBS.com, which is used by consumers throughout the United States. *Id.* On the website, visitors and digital subscribers can access "CBS Television online," including primetime, daytime, late night shows and more. *Id.* ¶ 2. To entice users to enter their PII, Defendant touts exclusive benefits that only subscribers will receive. *Id.* ¶ 50. Paramount then monetizes the PII it collects from subscribers through targeted advertisements. *Id.* ¶¶ 72, 76. Specifically, Paramount utilizes a tool known as a Facebook Tracking Pixel, which is an embedded piece of software that appears on each webpage and is invisible to users. *Id.* ¶¶ 12-48. The Facebook tracking pixel installed by Paramount does exactly what it sounds like: it tracks how a user of the Paramount website or App interacts with it and then discloses that information to Facebook to be used for advertising efforts and other purposes. *Id.* To implement the tracking pixel, Paramount intentionally selects certain functions of the tracking pixel that it wishes to implement on its website and sends those selections to Facebook who then returns a piece of code for Paramount to integrate into its website according to the features Paramount desires. *Id.* Unbeknownst to digital subscribers of Paramount like Plaintiff and Class Members, Paramount had configured the tracking pixel to collect and send information to Facebook regarding their use of the site, including not only the URL of the webpages they visited, but also information concerning the video content to which subscribers accessed on the website or App. *Id.* Importantly, Paramount configured the Facebook tracking

3

pixel to include, in a single transmission to Facebook, both Plaintiff's and Class Members' Facebook ID ("FID"), a unique identifier that Facebook assigns to each of its users, and the URL of the webpages they visited that also contained the titles of videos to which they navigated or viewed. *Id.*

Plaintiff Sharon Parcell is a Paramount digital subscriber and has been since around 2021. *Id.* ¶ 53. She has an account with Paramount and can log into it to access Defendant's video library and other media. *Id.* ¶ 54. To subscribe to Paramount's digital platform, Ms. Parcell provided her personal information including her name, email address, birthday, zip code and gender, which in turn Defendant disclosed to Facebook for the purpose of aiding Defendant's business and use of targeted advertisements. *Id.* ¶ 55. Ms. Parcell was unaware that the tracking pixel monitored her interactions with videos on CBS.com and was further unaware that Paramount disclosed this information to Facebook alongside her FID. *Id.* ¶ 57. Ms. Parcell was never provided any written notice that Paramount discloses her personal viewing information to Facebook in conjunction with her FID, nor did Paramount ever obtain her written consent to do so. *Id.* ¶ 77.

## LEGAL STANDARD

The purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the plaintiff's complaint, not to decide the merits of the case. *Derfus v. City of Chicago*, 42 F Supp. 3d 888, 893 (7th Cir. 2014) (internal citation omitted). For purposes of a motion to dismiss, the Court accepts "as true all of the well-pleaded facts in the complaint and draws all reasonable inferences in favor of the plaintiff." *Platt v. Brown*, 872 F.3d 848, 851 (7th Cir. 2017) (internal citation omitted). "[A]ll this means is that the plaintiff must include enough details about the subject-matter of the case to present a story that holds together. At this pleading stage, we do not ask whether these things actually happened; instead, the proper question to ask is still could these

4

things have happened." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 526 (7th Cir. 2015) (internal quotation marks and citation omitted). *See also In re Facebook Biometric Info. Priv. Litig.,* 185 F. Supp. 3d 1155, 1170 (N.D. Cal. 2016) ("On a 12(b)(6) motion, the Court examines the sufficiency of the complaint under the plausibility standard set out in *Bell Atl. Corp. v. Twombly*. . . The Court accepts as true '[a]ll well-pleaded allegations of material fact in the complaint" and construes them 'in the light most favorable to the non-moving party.' . . . The complaint survives a motion to dismiss when it alleges 'enough facts to state a claim to relief that is plausible on its face.'") (internal citation omitted).

## ARGUMENT

**I.     Defendant's Terms of Use are not properly considered at the pleading stage.**

Defendant first attempts to dismiss Plaintiff's claims by insisting that she is barred from seeking relief because she did not avail herself of Defendant's self-constructed and one-sided dispute resolution process. Mot. at 8-9. To make this argument, Defendant improperly introduces its purported Terms of Service, which are not part of the pleadings and should not be considered by the Court in ruling on a 12(b)(6) motion. *Tierney v. Vahle*, 304 F.3d 734, 738 (7th Cir. 2002) (noting that consideration of extraneous documents converts a 12(b)(6) motion to a motion for summary judgment "even if the document had merely been referred to in the complaint.") (internal citations omitted). Because Plaintiff's Complaint neither references nor discusses Paramount's Terms to any degree and the Terms are not central to her VPPA claim, the Terms are outside the purview of the pleadings and should not be considered by the Court.

Moreover, even if the Court does consider Defendant's argument, Defendant fails to mention that it revised its Terms of Service on February 16, 2022 and the revised 2022 Terms contains no mention of the informal dispute resolution clause that Defendant contends bars Plaintiff's claim here. *See* Declaration of Gary Klinger in Support of Plaintiff's Opposition to

5

Defendant's Motion to Compel Arbitration, Dismiss Class Claims, and Stay all Proceedings, ¶ 3, Exh. A. The 2017 and 2021 Terms that Defendant contends were in effect between January 1, 2021 "through the end of 2021"[1] expressly allows for future modification of the agreements and states that:

> We may change these Terms in the future, so we encourage you to review periodically the Terms of Use applicable to each Service you use. The most current version of the applicable Terms of Use (along with its effective date) will be linked from each of the Services. If you do not agree with any changes to these Terms, your sole remedy is not to use the Services. If you continue to use the Services after we change these Terms, you accept all changes.

Mantell Decl. Exhs. B § 1 & D § 1.

The 2022 Terms that were in effect between February 16, 2022 and July 14, 2022 when Plaintiff filed her complaint contains similar language:

> By accessing and using the Site or downloading materials from the Site, you accept and agree to, without limitation or qualification, these Terms of Use. Paramount reserves the right, in its sole discretion, to modify, alter or otherwise change these terms and conditions at any time. Changes and/or modifications shall become effective immediately upon the posting. Please review these Terms of Use periodically. Your continued use of the Site following the posting of changes and/or modifications will constitute your acceptance of these Terms of Use.

Klinger Decl. Exh. A § Acceptance of Terms.

Accordingly, when Plaintiff visited the website in June of 2022 and viewed videos thereon, she consented to the revised Terms in effect at that time. *See* Declaration of Sharon Parcell in Support of Plaintiff's Opposition to Defendant's Motion to Compel Arbitration, Dismiss Class Claims, and Stay all Proceedings, ¶ 3; Klinger Decl. ¶ 3. *Miracle-Pond v. Shutterfly, Inc.*, 2020 WL 2513099, at *5 (N.D. Ill. May 15, 2020) ("Illinois courts allow parties to agree to authorize one party to modify a contract unilaterally.") Indeed, as the 2022 Terms state "[t]hese Terms of Use contain the entire and exclusive agreement between you and us regarding use of the Site,

---

[1] *See* Declaration of Jon Mantell ¶¶ 5,6. ECF No. 19 ("Mantell Decl.")

supersede all prior understandings of the parties hereto relating to the subject matter hereto and cannot be modified, except as specifically described herein." Klinger Decl. Exh. A § Miscellaneous.

Accordingly, the Court should reject Defendant's attempt to dismiss Plaintiff's claim by asserting contractual terms that were entirely absent from the agreement in effect at the time Plaintiff filed her Complaint.

**II.     Plaintiff sufficiently alleged that Paramount violated the VPPA.**

Defendant next argues two bases for dismissal of Plaintiff's Complaint. First, that Plaintiff has failed to plead that Defendant disclosed PII and second that Plaintiff has not alleged that Defendant "knowingly" disclosed PII. Mot. at 9, 12. Each of these arguments relies on both a misreading of the Complaint and a misunderstanding of the law.

**a.    Plaintiff has alleged that Defendant disclosed her PII**

To succeed on a VPPA claim, Plaintiff must allege that Defendant knowingly disclosed: 1) Plaintiff's identity; 2) the identity of "specific video materials"; and 3) the fact that Plaintiff "requested or obtained" that material. *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1095 (N.D. Cal. 2015) (citing to 18 U.S.C. § 2710(a)(3)) ("*Hulu II*"). As acknowledged by Paramount, Plaintiff only need allege facts to support a "plausible inference" that Defendant violated the VPPA. Mot. at 9.

Plaintiff alleges Paramount required her to provide her name, email address, birthdate, and zip code to subscribe to its services. Compl. ¶¶ 40, 49, 55. Paramount subsequently disclosed this information to Facebook. *Id.* ¶¶ 54-56. Further, the Complaint demonstrates that Plaintiff had accounts with Facebook and Paramount simultaneously, and that Paramount "hosts the Facebook Tracking Pixel and transmits three distinct events to Facebook", each of which "independently and

7

jointly permit[] an ordinary person to identify a video's contents, title and location." *Id.* ¶¶ 17, 22, 52-53. "When a visitor watches a video on CBS.com while logged into Facebook, Defendant compels a visitor's browser to transmit the c_user cookie to Facebook. The c_user cookie contains that visitor's unencrypted Facebook ID." *Id.* ¶ 23. Other courts analyzing VPPA claims agree that this information is PII. *See Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373, at (D. Mass. Sept. 19, 2022) (holding in analogous circumstances that "Ambrose's VPPA claim plausibly states a claim for relief"); *Stark v. Patreon, Inc.*, 2022 WL 7652166, at *8 (N.D. Cal. Oct. 13, 2022) (same); *see also In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 282 (3d Cir. 2016) (names are PII under the VPPA); *Eichenberger v. ESPN, Inc.,* 876 F.3d 979, 986 (9th Cir. 2017) ("A Facebook link or an email address may very well readily enable an 'ordinary person' to identify an individual."); *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014) ("disclosure of a Facebook ID, which can identify a specific person without any additional steps, does qualify as personally identifiable information."); *Yershov v. Gannet Satellite Info. Network, Inc.*, 204 F. Supp. 3d 353, 364 (D. Mass. 2016) (disclosure of device identifier in conjunction with GPS coordinates).

Accordingly, individually and in the aggregate, the data collected and disclosed to Facebook by Defendant, including Plaintiff's name, email address, Facebook ID, birthdate, and browser ID are undoubtedly PII under the VPPA. Compl. ¶¶ 40, 49, 55. This identifying information was disclosed to Facebook in conjunction with Plaintiff's "event data, which recorded and disclosed the video's title and URL, along with every time Plaintiff Parcell paused or played a video." *Id.* ¶ 55; *see e.g. In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 798 (N.D. Cal. 2019) (finding it "reasonable to infer, at least at the pleading stage, that

8

when a user receives a video or likes a video, he watches the video, such that this information sheds significant light on his video-watching behavior.").

Plaintiff does not dispute that the VPPA is violated when one "disclose[s] information that identifie[s] a person as having requested or obtained specific video materials." *Hulu II*, 86 F. Supp. 3d at 1096 (quotations omitted); *see* Mot. at. 9-10. And that is precisely what Plaintiff pleads, that Defendant disclosed her viewing habits when it compelled her browser to transmit her FID or other PII like her unique browser value to Facebook. Compl. ¶¶ 17-47. Moreover, Defendant's incorporation of "Advanced Matching" causes the website to transmit names and email addresses of users and "Defendant knows Facebook will match the Advanced Matching parameters with a subscriber's subsequent activity." *Id.* ¶¶ 36-43. This is enough to demonstrate that Defendant disclosed information that identifies an individual alongside information reflecting their viewing preferences. *Hulu II,* 86 F. Supp. 3d 1090 at 1096 (noting the transmission of the identity and video titles need not occur simultaneously so long as both parties understood "how the name and titles were related"); *Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 486 (1st Cir. 2016).

Defendant then argues that, because "Plaintiff never alleges that an ordinary person could unencrypt the fr cookie's Facebook ID," the fr cookie cannot constitute personally identifiable information. Mot. at 10-11. Multiple courts disagree. *See Hulu II.*, 86 F. Supp. 3d 1090 at 1097 ("No one would deny that I would violate the VPPA by passing someone an encrypted list of Judge Bork's video rentals—if my recipient and I both understand that we would use a mutually intelligible code."); *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182-183 (S.D.N.Y. 2015) ("Disney could not disclose the information at issue here, along with a code that enabled Adobe to decrypt the hashed serial number and other information necessary to determine the specific

device's user, and still evade liability."); *see also Ambrose*, 2022 WL 4329373, at *1 (D. Mass. Sept. 19, 2022); *Stark v. Patreon, Inc.*, 2022 WL 7652166, at *8 (N.D. Cal. Oct. 13, 2022) (same).

That's because encryption has no impact on content, it only protects information from unauthorized access. *See generally Bernstein v. U.S. Dept. of State*, 945 F, Supp. 1279, 1282 (N.D. Cal. 1996) (describing encryption process). Text messages can be encrypted, for example, and ordinary people send, receive, and read those messages the same as unencrypted ones. *See, e.g.*, *Intercarrier Communications LLC v. WhatsApp Inc.*, 213 WL 5230631, at *4 (E.D. Va. Sept. 13, 2013) (observing WhatsApp has "an estimated 200-300 million users" and "allows users to send and receive text, picture, audio, and video messages"). As the intended recipient, the same holds true for Facebook, and accordingly, Plaintiff adequately pleads that the fr cookie contains a Facebook ID and "identif[ies] particular users." Compl. ¶ 26; *see also id.* ¶¶ 37, 42-43, 48, 74, 76.

Defendant also argues that Plaintiff has not pleaded that she visited CBS.com while logged into Facebook and thus cannot show that her Facebook ID was transmitted alongside her viewing preferences and other identifying information (e.g., name, birthdate, email address, zip code). Mot. at 10. But Plaintiff pleads that she is a Facebook user who visits CBS.com and that Defendant transmitted her PII, including the c_user and fr cookies to Facebook. Compl. ¶¶ 52-56. This is sufficient to allow the Court to plausibly infer she visited CBS.com while logged in to Facebook.

Defendant's argument that browser identifiers do not constitute PII fails because Facebook similarly is able to connect that information with other identifiers previously disclosed. *See* ¶¶ 30-31. If the fr cookie and _fbp cookies are transmitted at the same time, for example, then the _fbp cookie, which contains a browser identifier, can still be associated with the fr cookie, which contains a Facebook ID, even after the fr cookie expires. *Compare id.* ¶ 29 *with id.* ¶ 30 (identifying different triggering events between the fr and _fbp cookies). Put differently, once a

Facebook ID or email address is associated with a particular browser identifier, that transforms the identifier into information "which itself identifies a particular person". *See Robinson,* 152 F. Supp. 3d at 182.

Finally, Defendant implausibly argues that Facebook disclosed the data from Defendant's website to itself. Mot. at 11. But by intentionally installing the tracking pixel on CBS.com, Defendant bundled Plaintiff's FID with information regarding videos she watched or obtained on CBS.com, and then directed the combined data (FID plus video content) to be transmitted to Facebook in a single transmission, in violation of the VPPA. Compl. ¶¶ 54-57. *Hulu I,* 2014 WL 1724344, at *13 (noting a VPPA violation where the website's code initiates the transmission of the Facebook cookies); *Capello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *1-2 (N.D. Cal. Apr. 5, 2019) (denying motion to dismiss VPPA claim where plaintiffs alleged Walmart programmed its website to disclose its users' viewing information and Facebook IDs to Facebook via inclusion of a Facebook pixel).[2] That undeniably constitutes a "disclosure," as the plain meaning and legislative intent make clear. OXFORD ENGLISH DICTIONARY (3d ed. 2001) (defining "disclose" as "[t]o uncover and expose to view (anytime material)"); S. Rep. 100-599, at 5-6 (expressly contemplating "interactive television cables, the growth of computer checking and check-out counters, of security systems and telephones, all lodged together in computers"); *In re Hulu Priv. Litig.*, 2012 WL 3282960, at *6 (N.D. Cal. Aug. 10, 2012) (pointing to "Congress's concern with protecting consumers' privacy in an evolving technological world").

---

[2] *See also* e.g. *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589, 608 (9th Cir. 2020) (holding that "[w]e adopt the First and Seventh Circuits' understanding that simultaneous, unknown duplication and communication of GET requests do not exempt a defendant from liability under the party exception").

Ultimately, at the pleading stage, the question before this Court is confined to whether Plaintiff has sufficiently alleged a violation of the VPPA, and she undoubtedly has. Defendant cannot overcome these well-pleaded allegations.

### b. Plaintiff sufficiently alleged that Paramount "knowingly" disclosed PII.

Defendant's final attempt at dismissal is also its most outlandish—claiming Plaintiff did not sufficiently plead that Defendant "knowingly" disclosed her PII. Mot. at 12. To do so, Defendant relies on *Hulu II*, Mot. at 13, but this reliance is misguided because the court was deciding a motion for summary judgment following discovery. 86 F. Supp. 3d 1090 at 1104. Ultimately, the court stated that, "Hulu could not have 'knowingly' disclosed PII to Facebook *unless it knew that Facebook was combining the Facebook User ID with the video title embedded in Hulu's watch page URL*." (emphasis added). *Id*. at 1097.

Here, Plaintiff has alleged that Defendant intentionally integrated the Facebook tracking pixel into its website and affirmatively configured what information would be harvested from its subscribers and disclosed to Facebook. Compl. ¶¶ 12-57. That information included the video content requested by Plaintiff, alongside Plaintiff's FID, in a single transmission. *Id.* The Complaint further makes clear that Defendant's implementation of the tracking pixel was discretionary and that Defendant could have configured the tracking pixel to limit the sharing of sensitive information like URL's containing video titles but did not. *Id*. At the pleading stage, Plaintiff has sufficiently alleged Defendant's knowledge of the disclosure because she demonstrates Defendant's "consciousness of transmitting the private information." *Hulu II*, 86 F. Supp. 3d at 1095; *see also Ambrose*, 2022 WL 4329373, at *2 (observing that the plaintiff adequately pled that "the Globe knowingly disclosed his PII (and the PII of other digital subscribers) to Facebook"); *see also Stark*, 2022 WL 7652166, at *7 (holding plaintiffs "Patreon's

12

knowledge of such disclosure"). It matters neither whether Defendant possesses "knowledge of illegality or potential consequences," *Senne v. Village of Palatine, Ill.*, 695 F. 3d 597, 603 (7th Cir. 2012), nor whether "third parties actually see the disclosed information to constitute a violation." *Enslin v. The Coca-Cola Co.*, 136 F. Supp. 3d 654, 671 (E.D. Pa. 2015); *see also Hulu I*, 2013 WL 6773794, at *7.

Defendant's remaining arguments, specific to the cookies, are easily dispensed with. First, Defendant argues "Plaintiff does not even allege that Paramount knowingly disclosed" PII in respect Plaintiff's fr and _fbp cookie allegations. Mot. at 13. Plaintiff alleges that Paramount made the business decision to implement each of the tools that collect and disclose PII, and it cannot evade knowledge of those tool's capabilities. Compl. ¶¶ 12-56.

As to Paramount's use of Advanced Matching and the c_user cookie, Defendant asserts that Plaintiff "does not sufficiently allege facts making it plausible that Paramount ever knew that video watching information, Advanced Matching parameters, and unencrypted Facebook IDs were transmitted such that Facebook did 'combine those discrete things to reconstruct PII". Mot. at 13. Defendant similarly asserts that "Plaintiff does not plausibly allege how Paramount knows that information was transmitted to Facebook such that an 'ordinary person' would be able to determine what videos specific CBS.com visitors watched." *Id.*

Defendant fails to mention the numerous paragraphs in the Complaint stating otherwise. Compl. ¶¶ 18, 22 44-47. Plaintiff's allegations fully support the notion that Defendant knowingly disclosed its subscribers' personally identifiable information—including a record of every video clip they request, obtain, or view alongside their unique FID—to Facebook without their consent. *Id.* ¶¶ 18, 22 44-47. Thus, by integrating and configuring the Facebook tracking pixel, Defendant possessed "consciousness of transmitting the private information." *See In re Hulu Priv. Litig.*, 86

13

F. Supp. 3d at 1095. Nonetheless, Defendant characterizes these detailed allegations as either (1) "conclusory" or (2) inferences stemming "from the functionality and purpose of the FB Tracking Pixel and Advanced Matching, including because Pixel enables Defendant to run targeted advertising". Mot. at 13-14. While the latter is inconsequential because inferences are permitted, Defendant's conclusory characterization demonstrates its bad faith, when considering the contents of Plaintiff's allegations. The screenshots, accompanied with explanations of the cookies in technical language, cannot plausibly be considered a recital of VPPA's legal elements, especially when the technical language found in the Complaint is not in the VPPA at all. Compl. ¶¶ 17-48.

Defendant's final argument—that if Paramount "did not think it was conveying PII, then there could be no knowledge of the conveyance"—is its least credible yet. Mot. at 14. Defendant's reliance on *Bernadino* and *Hulu II* is misplaced because those courts were deciding motions with more stringent pleading and evidentiary standards than here. *Bernardino v. Barnes & Noble Booksellers, Inc.*, 2017 WL 7309893, at *9; *Hulu II*, 86 F. Supp. 3d at 1091. Specifically, the *Hulu II* Court granted summary judgment due to lack of evidence that a unique identifier had been directly tied to the defendant. 86 F. Supp. 3d at 1096-1098. Here, by contrast, Plaintiff alleged that her FID, a unique identifier, was combined "with the event data, allowing Facebook to know. . . what CBS.com videos a subscriber has watched." Compl. ¶ 35. The *Bernardino* plaintiff sought a preliminary injunction, requiring proof of "a clear and substantial showing of success on the merits and a strong showing of irreparable harm." 2017 WL 7309893, at *9. However, the court there did not take a position on the VPPA's knowledge element, explicitly stating "it is an open question as to whether Bernardino will prevail on the knowledge element." *Id*. Given that this action is not seeking injunctive relief, Defendant's reliance on *Bernardino* to dismiss Plaintiff's claim for a lack of knowledge is unavailing.

Plaintiff has sufficiently alleged facts to support Defendant's knowledge that it knew the nature of information it configured its website to transmit and that Defendant knew Facebook understood the information it received and connected that information to its own users. Compl. ¶¶ 11-14, 17-47, 76, 78. This is enough—particularly in light of that the facts are within Defendant's exclusive knowledge. *McCrohan v. Sandulli Grace, P.C.*, 369 F. Supp. 3d 324, 335 (D. Mass. 2019) (noting the relaxed pleading standard "where information is in a defendant's sole possession." (internal quotations omitted); *Eslava v. AllianceOne Receivables Mgmt., Inc.*, No. CIV.A. 12-0425-WS-N, 2012 WL 4336012, at *2 (S.D. Ala. Sept. 20, 2012) ("the pleadings stage is not the time for a federal court to sift through and decide among competing reasonable inferences from factual allegations."). This is especially true with regard to allegations concerning "knowledge," which "may be alleged generally." Fed. R. Civ. P. 9(b). Therefore, Plaintiff's allegations are sufficient, at the minimum, to move beyond the pleading stage and into discovery.

## CONCLUSION

For the foregoing reasons, Defendant's motion should be denied. If the Court grants the motion, Plaintiff respectfully requests leave to amend under Rule 15.

Dated: 10/20/2022                                                                 Respectfully Submitted,

By: */s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Telephone: (866) 252-0878
gklinger@milberg.com

15

Nick Suciu III
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
6905 Telegraph Rd., Suite 115
Bloomfield Hills, MI 48301
Phone: 313-303-3742
Email: nsuciu@milberg.com

**BURSOR & FISHER, P.A.**
Joshua D. Arisohn
Philip L. Fraietta
888 Seventh Avenue
New York, NY 10019
Tel: (646) 837-7150
Fax: (212) 989-9163
E-Mail: jarisohn@bursor.com
pfraietta@bursor.com

**BURSOR & FISHER, P.A.**
Christopher R. Reilly*
701 Brickell Avenue, Suite 1420
Miami, FL 33131
Tel: (305) 330-5512
Fax: (305) 679-9006
E-Mail: creilly@bursor.com

*Attorneys for Plaintiff and the Class*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on October 20, 2022, a copy of the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Gary M. Klinger*
Gary M. Klinger
