**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SHARON PARCELL, individually and on behalf of all others similarly situated,

*Plaintiff*,

v.

PARAMOUNT GLOBAL,

*Defendant*.

Civil Action No.

1:22-cv-03666

# REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue
New York, NY 10153
(212) 310-8000

BRYAN CAVE LEIGHTON PAISNER LLP

161 North Clark Street, Suite 4300
Chicago, Illinois 60601

*Attorneys for Defendant Paramount Global*

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ........................................................................................................ 2

I. Plaintiff's Claim Fails Under All Versions of the Website Terms At Issue. ...................... 2

A. The Court May Properly Consider the CBS Terms of Use. .................................. 2

B. To the Extent the Website Terms Were Unilaterally Modified At All, They Were Modified Again to Revert to the CBS Terms of Use. .................................. 3

C. In the Alternative, Even Under the Paramount Terms of Use, Plaintiff's Case is Still Improper and Should Be Dismissed. ................................................. 4

II. Plaintiff's Opposition Fails to Cure the Deficiencies in her VPPA Claim. ........................ 5

A. Plaintiff Has Not Plausibly Alleged that Paramount Disclosed PII. ....................... 5

B. Plaintiff Has Not Plausibly Alleged Paramount "Knowingly" Disclosed PII. ........................................................................................................ 11

CONCLUSION ........................................................................................................ 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. City of Indianapolis*,
742 F.3d 720 (7th Cir. 2014) ....................................................................................8

*Ambrose v. Boston Globe Media Partners LLC*,
No. CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022) ............................8, 12

*Austin-Spearman v. AMC Network Ent. LLC*,
98 F. Supp. 3d 662 (S.D.N.Y. 2015)..........................................................................6, 7

*Bernardino v. Barnes & Noble Booksellers, Inc.*, No. 17CV04570LAKKHP, 2017
WL 3727230, (S.D.N.Y. Aug. 11, 2017), *adopted by*, 2017 WL 3726050
(S.D.N.Y. Aug. 28, 2017) ......................................................................................10, 13

*Capello v. Walmart Inc.*,
No. 18-cv-06678-RS, 2019 WL 11687705 (N.D. Cal. Apr. 5, 2019).......................................7

*Coyer v. Univar Sols. USA Inc.*,
No. 1:22 CV 0362, 2022 WL 4534791 (N.D. Ill. Sept. 28, 2022).....................................8, 12

*Eichenberger v. ESPN, Inc.*,
876 F.3d 979 (9th Cir. 2017) ....................................................................................6, 11

*Ellis v. Cartoon Network, Inc.*,
2014 WL 5023535 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d
1251 (11th Cir. 2015)..................................................................................................8

*Enslin v. Coca-Cola Co.*,
136 F. Supp. 3d 654 (E.D. Pa. 2015), *aff'd*, 739 F. App'x 91 (3d Cir. 2018) .........................13

*Exactlogix, Inc. v. Jobprogress, LLC*,
No. 3:18-cv-50213, 2022 WL 488931 (N.D. Ill. Feb. 17, 2022)..............................................5

*Hepp v. Ultra Green Energy Servs.*,
LLC, No. 13 C 4692, 2016 WL 1073070 (N.D. Ill. Mar. 18, 2016)..........................................5

*In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020)..........................7

*In re Hulu Priv. Litig.*,
86 F. Supp. 3d 1090 (N.D. Cal. 2015) ......................................................7, 9, 11, 13

*In re Hulu Priv. Litig.*,
No. C 11-03764 LB, 2014 WL 2758598 (N.D. Cal. June 17, 2014).............................. *passim*

*Iac/Interactivecorp v. Roston*,
44 F.4th 635 (7th Cir. 2022) ....................................................................................4

*IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*,
512 F.3d 989 (7th Cir. 2008) ....................................................................................5

*Miracle-Pond v. Shutterfly, Inc.*,
No. 19 CV 04722, 2020 WL 2513099 (N.D. Ill. May 15, 2020)..........................................3

*In re Nickelodeon Consumer Priv. Litig.*,
827 F.3d 262 (3d Cir. 2016)..............................................................................6, 11

*Parvati Corp. v. City of Oak Forest*,
630 F.3d 512 (7th Cir. 2010) ....................................................................................9

*Resnick v. Schwartz*,
No. 17 C 04944, 2018 WL 4191525 (N.D. Ill. Sept. 3, 2018)............................................3

*Robinson v. Disney Online*,
152 F. Supp. 3d 176 (S.D.N.Y. 2015).....................................................9, 10, 12, 13

*Senne v. Village of Palatine*,
695 F.3d 597 (7th Cir. 2012) ..................................................................................13

*Shen Wei (USA) Inc. v. Sempermed, Inc.*,
No. 05 C 6004, 2007 WL 328846 (N.D. Ill. Jan. 30, 2007) ...........................................2

*Stark v. Patreon, Inc.*,
No. 22-cv-03131-JCS, 2022 WL 7652166 (N.D. Cal. Oct. 13, 2022) ..............................8, 2

*Wilson v. Triller, Inc.*,
No. 21-cv-11228 (JSR), 2022 WL 1138073 (S.D.N.Y. Apr. 18, 2022) ...............................6

**Statutes**

Video Privacy Protection Act, 18 U.S.C. § 2710, *et seq.* ...................................................1

Driver's Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* ...............................................13

**Other Authorities**

Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/ ..................................9

Internet Archive, *Wayback Machine*, https://web.archive.org/.................................................5

Meta for Developers, *Advanced Matching*,
https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching.............................................................................................................11

Paramount, *CBS User Account Creation Page*,
https://www.cbs.com/account/signup/createaccount ............................................................4, 5

S. REP. 100-599 (1988) ..........................................................................................................11

## INTRODUCTION

Despite Plaintiff's efforts in her Opposition, her First Amended Complaint (the "Complaint" or "FAC") remains insufficient for several reasons, starting with her failure to establish she complied with any of the iterations of the website terms at issue. Seemingly recognizing her failure to comply with the prerequisites for bringing her claim set forth in the CBS Terms of Use, Plaintiff now points to yet another set of terms—the Paramount Terms of Use—which contain a clause selecting New York state and federal courts as the exclusive venue for bringing claims as well as a jury trial waiver. Puzzlingly, however, Plaintiff has both (a) filed in Illinois federal court, and (b) demanded a jury trial. Under any variation of the website terms at issue, Plaintiff's case is therefore deficient.

Beyond the fact that all versions of the website terms at issue bar Plaintiff's claim, she has also failed to allege an actionable VPPA claim: she does not plausibly allege that Paramount disclosed personally identifiable information ("PII"), much less that Paramount did so knowingly. The VPPA defines PII as "information which identifies a person as having requested or obtained specific video materials or services from a video tape service provider." 18 U.S.C. § 2710(a)(3). Plaintiff's theory is that Paramount disclosed PII under this definition because (1) the Pixel allegedly disclosed the videos she watched on CBS.com, (2) a third-party cookie in her browser disclosed her Facebook ID to Facebook, and (3) Facebook could combine (1) and (2) to determine what videos Plaintiff watched on CBS.com. Plaintiff's "connect the dots" theory fails to state an actionable VPPA claim. First, a cookie is not PII within the meaning of the VPPA because it is not decipherable by ordinary persons and, without the disclosure of identifying information, Plaintiff fails the second prong of her own theory. Second, even if a cookie could constitute PII within the meaning of the VPPA, it was the cookie itself (which Plaintiff authorized Facebook to place) that allegedly disclosed her Facebook ID, not Paramount. Third,

Plaintiff has not alleged facts making it plausible that her unencrypted Facebook ID or other unhashed information identifying her, such as her name, was ever disclosed to third parties at all. Finally, even assuming that Plaintiff had adequately alleged that the cookie disclosed any non-anonymized identifying information, Plaintiff concedes that users must be logged into Facebook for this information to be transmitted, but she does not allege that she was simultaneously logged into Facebook and CBS.com.

Plaintiff also fails to meaningfully rebut Paramount's arguments that she has not plausibly alleged that Paramount "knowingly" disclosed PII, as is required to state a VPPA claim. Indeed, there can be no knowing disclosure under the VPPA where a recipient would have to "reverse engineer" PII. Plaintiff's Complaint fails for other reasons, but her (a) failure to plausibly allege Paramount disclosed PII within the meaning of the VPPA, and (b) failure to properly engage with Paramount's knowingly arguments renders the Complaint wholly theoretical and improperly speculative.

## ARGUMENT

### I. Plaintiff's Claim Fails Under All Versions of the Website Terms At Issue.

#### A. The Court May Properly Consider the CBS Terms of Use.

Plaintiff first contends that it would be improper for the Court to consider the website terms currently posted on CBS.com, *i.e.*, the CBS Terms of Use. But this is clearly contrary to the law. As courts in this district have acknowledged, "[f]or purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and it is capable of accurate and ready determination." *Shen Wei (USA) Inc. v. Sempermed, Inc.*, No. 05 C 6004, 2007 WL 328846, at *3 n.3 (N.D. Ill. Jan. 30, 2007). Furthermore, "[o]n a motion to dismiss, the Court may consider documents incorporated by reference to the pleadings without transforming the motion into one

for summary judgment if the documents are referred to in the complaint and are central to the plaintiffs' claim." *Resnick v. Schwartz*, No. 17 C 04944, 2018 WL 4191525, at *3 n.8 (N.D. Ill. Sept. 3, 2018) (finding it appropriate to consider the text of a pension plan without transforming defendants' motion to dismiss into one for summary judgment because the pension plan was "at the heart of the case."). Here, Plaintiff does not dispute the authenticity of CBS.com, and furthermore, contrary to Plaintiff's assertion, the website terms are clearly referenced in her Complaint, FAC ¶ 53 & Fig. 14, and are central to the validity of her claims. Indeed, Plaintiff's entire case centers on the CBS.com website. She cannot now claim that the Court is barred from considering the very website she has put at issue.

### B. To the Extent the Website Terms Were Unilaterally Modified At All, They Were Modified Again to Revert to the CBS Terms of Use.

Citing *Miracle-Pond v. Shutterfly, Inc.*, No. 19 CV 04722, 2020 WL 2513099, at *5 (N.D. Ill. May 15, 2020), Plaintiff argues that Defendant changed its operative website terms to the Paramount Terms of Use. But *Miracle-Pond* actually compels dismissal here because the Paramount terms on which she relies also contain a provision expressly allowing for future unilateral modification of the agreement:

> By accessing and using the Site or downloading materials from the Site, you accept and agree to, without limitation or qualification, these Terms of Use. Paramount reserves the right, in its sole discretion, to modify, alter or otherwise change these terms and conditions at any time. Changes and/or modifications shall become effective immediately upon the posting.

MTD Opp. at 6. Based on her own argument that unilateral modification provisions are binding and enforceable, Plaintiff should be deemed to have consented to the most recent version of the website terms posted to CBS.com. *Miracle-Pond*, 2020 WL 2513099, at *6, *9 (enforcing provision that gave defendant the right "to unilaterally modify the agreement at any time and without notice" and compelling arbitration). Here, the most recently posted terms are the CBS

Terms of Use, which are currently posted on CBS.com. Paramount, *CBS User Account Creation Page*, https://www.cbs.com/account/signup/createaccount.

As explained previously, Plaintiff failed to comply with the prerequisites for bringing her claim set forth in the CBS Terms of Use, which required Plaintiff to contact customer service regarding her claim, engage in informal negotiation, and mail a written notice of her claim to Paramount before filing suit. MTD at 3-4, 8-9. By failing to take these steps, Plaintiff has failed to comply with her contractual obligations and her claim should therefore be dismissed.

### C. In the Alternative, Even Under the Paramount Terms of Use, Plaintiff's Case is Still Improper and Should Be Dismissed.

Even if, as Plaintiff contends, the relevant terms are the Paramount Terms of Use, Plaintiff's claims should be dismissed for failure to comply with requirements set forth within those Terms of Use, including its mandatory forum-selection clause and jury trial waiver. The Paramount Terms of Use provide that "[a]ny legal action or proceeding related to this website shall be brought exclusively in a federal or state court of competent jurisdiction sitting in New York." Paramount Terms of Use, at § Location/Governing Law (ECF No. 31-1). Yet Plaintiff has filed this suit in Illinois federal court—in direct contradiction to the enforceable mandatory forum-selection clause in the version of the terms that she claims controls. *Iac/Interactivecorp v. Roston*, 44 F.4th 635, 643 (7th Cir. 2022) (finding that forum selection clauses containing "mandatory language specifying that disputes under the contract 'shall' or 'will' be litigated in a specific venue or forum" are mandatory and will be enforced).

The Paramount Terms of Use also include a jury waiver, which states:

> IN ANY ACTION OR PROCEEDING COMMENCED TO ENFORCE ANY RIGHT OR OBLIGATION OF THE PARTIES UNDER THESE TERMS OF USE, YOUR USE OF THE SITE OR WITH RESPECT TO THE SUBJECT MATTER HEREOF, YOU HEREBY WAIVE ANY RIGHT YOU MAY NOW HAVE OR HEREAFTER POSSESS TO A TRIAL BY JURY.

Paramount Terms of Use, at § Location/Governing Law (ECF No. 31-1). Courts in this district have found parties may waive their right to a jury trial through an express contract, which "dispense[s] with their previously existing constitutional right to a jury trial before [the] litigation beg[ins]." *Exactlogix, Inc. v. Jobprogress, LLC*, No. 3:18-cv-50213, 2022 WL 488931, at *3 (N.D. Ill. Feb. 17, 2022) (alteration in original); *IFC Credit Corp. v. United Bus. & Indus. Fed. Credit Union*, 512 F.3d 989, 994 (7th Cir. 2008) ("[A]n agreement to resolve a dispute in a bench trial is no less valid than the rest of the contract in which the clause appears"). If Plaintiff consented to the Paramount Terms of Use and those are deemed to govern this lawsuit, MTD Opp. at 6, Plaintiff is thus bound by the jury trial waiver and had no right to "demand a trial by jury" to begin with. FAC at 22. In any case, terms of use containing an arbitration agreement have also been posted on CBS.com at all relevant times, and were never taken down: indeed, the CBS Terms of Use, which contain an arbitration agreement, are currently posted on CBS.com. Paramount, *CBS User Account Creation Page*, https://www.cbs.com/account/signup/createaccount.[1]

Because Plaintiff's claims are barred under every iteration of the website terms that have been put at issue in this case, her claims are improper and should be dismissed.

## II. Plaintiff's Opposition Fails to Cure the Deficiencies in her VPPA Claim.

### A. Plaintiff Has Not Plausibly Alleged that Paramount Disclosed PII.

[1] The fact that the CBS Terms of Use were posted on CBS.com in the website footer throughout 2022 can be verified via the Wayback Machine. *See, e.g.*, https://web.archive.org/web/20220228013402/https://www.cbs.com/ (capture from February 28, 2022); https://web.archive.org/web/20220427012021/https://www.cbs.com/ (capture from April 27, 2022); https://web.archive.org/web/20220626000603/https://www.cbs.com/ (capture from June 26, 2022). "Courts have taken judicial notice of the contents of web pages available through the Wayback Machine as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." *Hepp v. Ultra Green Energy Servs.*, LLC, No. 13 C 4692, 2016 WL 1073070, at *2 n.1 (N.D. Ill. Mar. 18, 2016).

Plaintiff's Opposition fails to establish why she has plausibly alleged that Paramount disclosed PII for several reasons. To begin, Plaintiff has not and cannot plausibly allege that any of the Facebook cookies to which she points constitute PII, because an "ordinary person" could not "identify a specific individual's video-watching behavior" by using any of the cookies. *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 284, 290 (3d Cir. 2016); *Wilson v. Triller, Inc.*, No. 21-cv-11228 (JSR), 2022 WL 1138073, at *5-6 (S.D.N.Y. Apr. 18, 2022) (finding the "ordinary person" standard for PII to be "the correct one."). In addition, the fact that Facebook may itself be able to read its own cookies does not bear at all on whether Paramount disclosed PII, because the abilities of a recipient do not dictate what constitutes PII. *Eichenberger v. ESPN, Inc.*, 876 F.3d 979, 985 (9th Cir. 2017) (PII "must have the same meaning without regard to its recipient's capabilities"); *Triller*, 2022 WL 1138073, at *6 (citation omitted) ("[I]t follows that the Third Circuit's definition of PII—which does not make the scope of PII dependent on the specifics of the recipient of the disclosure . . . applies throughout the act.").

In addition, Plaintiff does not dispute, and therefore concedes that the c_user cookie is Facebook's cookie, not Paramount's. Relatedly, to the extent Facebook deposited the c_user cookie on Plaintiff's browser, it was as a result of *Plaintiff's* actions—*i.e.*, consenting to Facebook's placement of the cookie and logging into Facebook and choosing to keep herself logged in—rather than any action of Paramount's. *See In re Hulu Priv. Litig.*, No. C 11-03764 LB, 2014 WL 2758598, at *5 (N.D. Cal. June 17, 2014) ("When the 'remember me' box is checked, Facebook sets the c_user cookie"); *Austin-Spearman v. AMC Network Ent. LLC,* 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015) ("[I]f a person has chosen to remain logged into Facebook by checking the 'keep me logged in' button on Facebook's homepage, this 'c_user' cookie will continue to operate, regardless of what the user does with the web browser."). Plaintiff's own

allegations further confirm that it is the "visitor's browser" which "transmit[s] the c_user cookie to Facebook," FAC ¶ 23, establishing that any transmission of Plaintiff's unencrypted Facebook ID occurs within the cookie Facebook places on Plaintiff's browser and to Facebook itself, meaning Paramount is not doing the disclosing.

Plaintiff argues that Paramount nevertheless "compels" this disclosure. FAC ¶ 23. But Plaintiff's cited cases do not support her assertion that Paramount has thereby engaged in a disclosure that violates the VPPA. For one, the court in *Capello v. Walmart Inc.*, No. 18-cv-06678-RS, 2019 WL 11687705, at *1- 2 (N.D. Cal. Apr. 5, 2019) did not discuss whether a transmission between Facebook's cookie and Facebook could constitute a "disclosure" by the defendant since the defendant did not raise that argument, instead challenging the VPPA claim only by arguing that the plaintiff had consented to any disclosures. As for *In re Hulu*, the court in that case ultimately found on summary judgment that Hulu did not violate the VPPA as Plaintiff herself acknowledges. MTD Opp. at 14; *In re Hulu Priv. Litig.*, 86 F. Supp. 3d 1090, 1105 (N.D. Cal. 2015). Finally, *In re Facebook, Inc. Internet Tracking Litigation* acknowledged in the context of the Wiretap Act that it was *Facebook's code* that "direct[ed] the user's browser to copy the referrer header from the GET request and then send a separate but identical GET request and its associated referrer header to Facebook's server." 956 F.3d 589, 607 (9th Cir. 2020). The court did not discuss whether the "third-party website" the user was visiting had made any communications to Facebook. *Id.* at 607-08.

In any event, Plaintiff has not alleged facts sufficient to determine whether any transmission of the c_user cookie even occurred here, since Plaintiff does not allege she was logged into Facebook while watching videos. Instead, she asks this Court to "plausibly infer she visited CBS.com while logged in to Facebook" based on (1) the fact that "she is a Facebook user

who visits CBS.com," though she alleges nowhere that she did both at the same time, or even around the same time, and (2) her bald assertion—unmoored from any factual allegations—that "Defendant transmitted her PII, including the c_user and fr cookies to Facebook." MTD Opp. at 10. While plaintiffs may be entitled to reasonable inferences, "a plaintiff cannot survive a motion to dismiss with sheer speculation, bald assertions, or unsupported conclusory statements." *Coyer v. Univar Sols. USA Inc.*, No. 1:22 CV 0362, 2022 WL 4534791, at *3 (N.D. Ill. Sept. 28, 2022). Such an "inference" would "stop[] short of the line between possibility and plausibility of entitlement to relief." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014).

Indeed, Plaintiff's failure to sufficiently allege that the c_user cookie was actually transmitted is one of the reasons why this case is distinguishable from cases like *Ambrose v. Boston Globe Media Partners LLC*, No. CV 21-10810-RGS, 2022 WL 4329373 (D. Mass. Sept. 19, 2022), in which the plaintiff actually alleged that he had been logged into Facebook while he watched videos on bostonglobe.com. *See Ambrose v. Boston Globe Media Partners LLC*, No. CV 21-10810-RGS (D. Mass. Sept. 19, 2022), ECF No. 22 ¶ 66. This case is also distinguishable from *Stark v. Patreon, Inc.*, No. 22-cv-03131-JCS, 2022 WL 7652166, at *8 (N.D. Cal. Oct. 13, 2022), where the defendant did not raise, and thus the court did not have occasion to decide, the arguments that (1) the plaintiff failed to sufficiently allege that the c_user cookie was actually transmitted; and (2) a transmission between Facebook's cookies and Facebook could not constitute a "disclosure" by the defendant. The same is true for *Ellis v. Cartoon Network, Inc.*, 2014 WL 5023535, at *3 (N.D. Ga. Oct. 8, 2014), *aff'd on other grounds*, 803 F.3d 1251 (11th Cir. 2015)—a case not about Facebook cookies at all—where the court did not consider whether information transmitted between a third party and itself could

constitute a "disclosure" by the defendant. These cases which Plaintiff cites in an attempt to bolster her argument that the c_user cookie constitutes PII are thus inapposite.[2]

All of Plaintiff's analyses and analogies with regard to the fr cookie similarly fail because the fr cookie is yet another Facebook cookie, placed by Facebook onto users' browsers, which Facebook sends to itself. *See* Facebook, *Cookies Policy*, https://www.facebook.com/policy/cookies/ (referred to in FAC at ¶ 25 nn.24, 25; ¶ 30 n.27, ¶ 31 n.29). Plaintiff does not and cannot dispute this fact. Facebook is thus not only the "intended recipient" of the cookie, but also the sender. MTD Opp. at 10. Moreover, given that (a) Paramount does not itself disclose to Facebook any of the cookies to which Plaintiff points, and (b) to the extent these cookies were placed on Plaintiff's browser, it was due to her own actions, it is not even clear that Plaintiff's purported injury is fairly traceable to Paramount's conduct as is required for her to bring her claim. *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 518 (7th Cir. 2010) (plaintiff's injury was not traceable to defendant's conduct where the injury resulted from plaintiff's own conduct).

In addition, to argue that the fr cookie constitutes PII, Plaintiff relies on analyses from *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1097 and *Robinson v. Disney Online*, 152 F. Supp. 3d 176, 182-183 (S.D.N.Y. 2015). MTD Opp. at 9. But these analyses are inapplicable because they assume that there is a disclosure between a defendant and a third party, not that a disclosure is occurring from a third party to itself. Plaintiff's WhatsApp analogy is similarly irrelevant because it assumes Paramount is in the position of disclosing information to another party, when

[2] Plaintiff also recently submitted the *Lebakken v. WebMD* decision as supplemental authority. ECF No. 33-1. Like the other decisions Plaintiff cites, however, *WebMD* is also inapposite. The decision does not address Paramount's argument that because the cookies at issue are Facebook's, at most it is Facebook that transmits information from the cookies to itself. It further does not grapple with Paramount's specific "knowingly" arguments, discussed *infra*, including its argument that if a third party has to "reverse engineer" PII, there can be no knowing disclosure.

here it is Facebook that is disclosing information to itself. MTD Opp. at 10. As *Disney* holds, it is "information actually 'disclos[ed]' by a 'video tape service provider,' which must itself do the identifying . . . not information disclosed by a provider, plus other pieces of information collected elsewhere by non-defendant third parties." 152 F. Supp. 3d at 182 (citation omitted).

Plaintiff also cannot avoid that *Bernardino v. Barnes & Noble Booksellers, Inc.* found there was "no binding precedent" to support that the fr cookie constituted PII. No. 17CV04570LAKKHP, 2017 WL 3727230, at *9 (S.D.N.Y. Aug. 11, 2017), *adopted by*, 2017 WL 3726050 (S.D.N.Y. Aug. 28, 2017). Moreover, the *Bernardino* court considered *Hulu* and *Disney* in its decision, rendering the analyses Plaintiff draws on from those cases inapposite. *Id.*; MTD Opp. at 9. And more generally, as explained above, the question with respect to the fr cookie should not be whether Facebook can decrypt its own code, but rather whether an ordinary person could use the cookie to identify what videos a specific person viewed.[3]

In addition, Plaintiff's "first name, last name and email" and any other information allegedly disclosed through Advanced Matching also cannot constitute PII, since by Plaintiff's own admission, such information is "hashed" and "cannot be reversed back into the original data." FAC ¶ 36. Any names or email addresses disclosed through Advanced Matching are transformed into strings of numbers and letters that are indecipherable to ordinary persons, as demonstrated by an example cited in the Complaint:

```
<img height="1" width="1" style="display:none"
src="https://www.facebook.com/tr/?id=PIXEL_ID&ev=Purchase
  &ud[em]=f1904cf1a9d73a55fa5de0ac823c4403ded71afd4c3248d00bdcd0866552bb79
  &ud[fn]=4ca6f6d5a544bf57c323657ad33aae1a019c775518cf4414beedb86962aea7c1
  &ud[ln]=41f3e15ff8a4e4117da46465954304497ef29bdf35afaa9e36d527864d24c266
```

[3] As to the browser identifier bearing _fbp cookie, Plaintiff sheepishly claims that it can be combined with other information to identify a person, thus acknowledging that it does not constitute PII on its own. MTD Opp. at 10.

See FAC at ¶ 38 n. 39; Meta for Developers, *Advanced Matching*, https://developers.facebook.com/docs/meta-pixel/advanced/advanced-matching. Plaintiff's own allegations thus cast doubt on whether ordinary persons could "decrypt the . . . information necessary to determine the specific device's user." MTD Opp. at 9-10.

If anything, this discussion illustrates how poorly the VPPA fits here, and how widely Plaintiff's facts diverge from the disclosure of Judge Bork's video tape rental history which the statute was designed to address. S. REP. 100-599, at *5 (1988). Contrary to Plaintiff's assertion that the "Legislature intended the VPPA's definition of PII to be broadly construed," MTD Opp. at 2, when "Congress passed the Act," it did not intend "for the law to cover factual circumstances far removed from those that motivated its passage" such as those at issue here. *Nickelodeon*, 827 F.3d at 284, 286 (finding no violation of the VPPA occurred and observing that comparing "use of cookies" with disclosures by the archetypal "corner video store" "is, at best, a strained enterprise"); *Eichenberger*, 876 F.3d at 985 ("[W]e are not persuaded that the 1988 Congress intended for the VPPA to cover circumstances so different from the ones that motivated its passage."). Plaintiff's VPPA claim should accordingly be dismissed.

**B. Plaintiff Has Not Plausibly Alleged Paramount "Knowingly" Disclosed PII.**

Citing *In re Hulu Priv. Litig.*, 86 F. Supp. 3d at 1095, Plaintiff claims that she "has sufficiently alleged Defendant's knowledge of the disclosure because she demonstrates Defendant's 'consciousness of transmitting the private information.'" MTD Opp. at 12. But she does no such thing. *Hulu* emphasizes that in order to "knowingly disclose[] any user 'as having requested or obtained specific video materials or services," a video service provider must have "kn[own] that Facebook might combine a Facebook user's identity (contained in the c_user cookie) with the watch-page address to yield 'personally identifiable information' under the VPPA." *Hulu*, 86 F. Supp. 3d at 1097 (quoting 18 U.S.C. § 2710(a)(3)). As explained before,

Plaintiff never explains how Facebook combines video watching information, Advanced Matching parameters, and unencrypted Facebook IDs, let alone how Paramount knows how and that Facebook does so. MTD at 13.

As noted above, *supra* at 9, Plaintiff "cannot survive a motion to dismiss with sheer speculation, bald assertions, or unsupported conclusory statements." *Coyer*, 2022 WL 4534791, at *3. Despite her efforts in her Opposition, Plaintiff's attempt to speculate about Paramount's knowledge based on the purposes of the Facebook Tracking Pixel and Advanced Matching and how those tools work (*see* FAC ¶¶ 37, 76) should be rejected, as should Plaintiff's unsupported conclusory statements that Paramount knowingly disclosed PII (*Id.* ¶¶ 3, 5, 44-45). Though Plaintiff points to "screenshots, accompanied with explanations of the cookies in technical language" to claim that her conclusory statements are indeed supported, these screenshots and explanations purporting to depict the function of the Facebook Tracking Pixel and Advanced Matching are not factual allegations regarding Paramount's *knowledge*. MTD Opp. at 14.

Indeed, Plaintiff ignores entirely the lesson of *Robinson v. Disney Online*, which provides that if the recipient has to "reverse engineer" PII, there can be no knowing disclosure. 152 F. Supp. 3d at 181. In fact, she does not cite *Disney* at all in discussing whether Paramount "knowingly" disclosed PII. MTD Opp. at 9, 11. This is because *Disney* makes clear that Paramount is responsible only for understanding "the nature of the information actually disclosed," not "the informational capabilities of any third-party recipient." *Disney*, 152 F. Supp. 3d at 181-82. Yet Plaintiff—and the cases she relies on, *Ambrose v. Boston Globe Media Partners LLC*, 2022 WL 4329373 and *Stark v. Patreon, Inc.*, 2022 WL 7652166, at *8—do not engage with this argument. In addition, Paramount cannot not be charged with knowledge of what the Facebook cookies disclose to Facebook, given it is the cookies themselves that make

any disclosures, not Paramount. *See supra* Argument II. Plaintiff incorrectly presumes it is sufficient to simply state Paramount "knowingly discloses information sufficiently permitting an ordinary person to identify a specific individual's video viewing behavior," FAC ¶¶ 44-45, 76, without explaining at all how Paramount knows that Facebook combines the disparate pieces of information Facebook sends itself into PII. Under *Disney* and *Hulu*, such allegations do not suffice.

Much of Plaintiff's knowingly argument amounts to an exercise in evasion, including her claim that *Bernardino* and *Hulu* are inapposite because the cases were decided under different "pleading and evidentiary standards." MTD Opp. at 14. Regardless of the pleading or evidentiary standard, Plaintiff cannot escape *Bernardino* and *Hulu*'s interpretations of the VPPA, including that "the knowledge element of the VPPA violation" is "intertwined with the definition of PII" such that a defendant must "think it was conveying PII" for there to be "knowledge of the conveyance." *Bernardino*, 2017 WL 3727230, at *9. Indeed, Plaintiff herself quotes *Hulu* in explaining what constitutes a knowing disclosure under the VPPA. MTD Opp. at 12.

Other cases Plaintiff relies on assess the meaning of the word "knowingly" in the Driver's Privacy Protection Act, 18 U.S.C. § 2721 *et seq.* (the "DPPA"), not the VPPA. MTD Opp. at 12-13. These cases indicate a DPPA knowing disclosure requires voluntary action, but not knowledge of illegality. *Senne v. Village of Palatine*, 695 F.3d 597, 603 (7th Cir. 2012); *Enslin v. Coca-Cola Co.*, 136 F. Supp. 3d 654, 670 (E.D. Pa. 2015), *aff'd*, 739 F. App'x 91 (3d Cir. 2018). But in the VPPA context, the *Hulu* court found "[i]t is not enough . . . that a disclosure be merely 'voluntary' in the minimal sense of the defendant's being 'aware of what he or she is doing and . . . not act[ing] because of some mistake or accident.'" *Hulu*, 86 F. Supp. 3d at 1095. *Senne* and *Enslin* are inapposite.

Seemingly recognizing these flaws in her argument, Plaintiff argues courts "relax" pleading requirements "'where information is in a defendant's sole possession.'" MTD Opp. at 15. But because there is no plausible allegation that Paramount ever knew Facebook combined video watching information, unhashed identifiers collected via Advanced Matching, and unencrypted Facebook IDs, this ploy cannot save Plaintiff, who has failed to plausibly allege that Paramount knowingly disclosed PII.

## CONCLUSION

Paramount respectfully requests that the Court dismiss the Complaint in its entirety for the foregoing reasons.

Dated: New York, New York
November 17, 2022

Respectfully submitted,

*/s/ David L. Yohai*

David L. Yohai (admitted *pro hac vice*)
Blake J. Steinberg (admitted *pro hac vice*)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
david.yohai@weil.com
blake.steinberg@weil.com

David R. Singh (admitted *pro hac vice*)
Amy T. Le (*pro hac vice* pending)
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, California 94065
Telephone: (650) 802-3000
Facsimile: (650) 802-3100
david.singh@weil.com
amy.le@weil.com

Brian A. Sher
Steven G. Trubac
BRYAN CAVE LEIGHTON PAISNER LLP
161 North Clark Street, Suite 4300
Chicago, Illinois 60601

Telephone: (312) 602-5000
Facsimile: (312) 602-5050
brian.sher@bclplaw.com
steve.trubac@bclplaw.com

*Attorneys for Paramount Global*